**Desiree ROGERS, on behalf of Herself and All Others Similarly Situated and the General Public, Plaintiff,**

v.

**NationsCREDIT FINANCIAL SERVICES CORPORATION, a Corporation, Defendant.**

**No. C–98–2680 SC.**

United States District Court, N.D. California, San Francisco Division.

Jan. 20, 1999.

Paul F. Bennett, Solomon B. Cera, Patricia A. Szumowski, Joseph M. Barton, Gold Bennett & Cera LLP, San Francisco, for Desiree Rogers, Plaintiffs.

Philip S. Warden, Pillsbury Madison & Sutro LLP, San Francisco, for Nationscredit Financial Services Corporation, defendants.

**ORDER RE: DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

CONTI, District Judge.

## I. INTRODUCTION

In the above-captioned case, Plaintiff Desiree Rogers ("Rogers") brings an action on behalf of herself and all others similarly situated against NationsCredit Financial Services Corporation ("NationsCredit"). Plaintiff seeks class-wide relief for persons who have filed for bankruptcy relief and yet have been paying discharged debts to Defendant due to Defendant's alleged violations of the United States Bankruptcy Code and the California Business and Professions Code. Specifically, Plaintiff alleges that NationsCredit has improperly solicited reaffirmation agreements and otherwise demanded payment of pre-petition debts based on unenforceable reaffirmation agreements. Rogers' claims against NationsCredit include violations of 11 U.S.C. §§ 524(c), 524(a)(2), and 362 of the U.S. Bankruptcy Code; violations of the California Unfair Practices Act; declaratory relief as to the enforceability of the reaffirmation agreements; unjust enrichment and constructive trust; and an accounting of monies collected by Defendant pursuant to the reaffirmation agreements. Rogers seeks *inter alia* declaratory and injunctive relief, accounting, actual damages, disgorged profits, punitive damages, attorney's fees, and costs of suit.

In the instant motions, Plaintiff moves for certification of the plaintiff class:

All persons who filed bankruptcy and (1) entered into one or more reaffirmation agreements with the named Defendant, which agreements were not filed with the Bankruptcy Court, or (2) entered into one or more reaffirmation agree-

ments with the Defendant, which agreement was not approved by the Bankruptcy Court provided such person was a *pro se* debtor.

Defendant moves to dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. BACKGROUND

Taking all material allegations in the Complaint as true[1], the following is the history of this dispute: On August 30, 1996, Plaintiff filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court, Northern District of California, without the assistance of an attorney. Prior to filing bankruptcy, Plaintiff had borrowed approximately $3,000 from Defendant (the "Loan"). Plaintiff listed as a pre-petition debt on her bankruptcy petition an obligation of $2,357.03 to NationsCredit for the Loan.

On September 25, 1996, while Plaintiff's case was pending in the Bankruptcy Court, Defendant mailed Plaintiff a form reaffirmation agreement for the amount outstanding on the Loan, and requested Plaintiff sign and return the agreement. Subsequently, prior to Plaintiff's discharge from bankruptcy and during the automatic stay imposed by the bankruptcy proceedings, Defendant made regular and repeated phone calls to Plaintiff's place of employment demanding that she sign the reaffirmation agreement. Plaintiff refused. At no time did Defendant seek relief from the Bankruptcy Court from the automatic stay.

On December 16, 1996, the Bankruptcy Court discharged Plaintiff's pre-petition debts, including the Loan. After Plaintiff's discharge, Defendant continued to call Plaintiff at her place of employment, and

---

1. Both a motion to dismiss and a motion for class certification require that the Court take all material allegations in the Complaint as true. *See NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986) (motion to dismiss); *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975) *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) (motion for certification).

102

threatened to garnish her wages. On April 10, 1997, Defendant sent Plaintiff a letter attempting to collect the $1,053.97 allegedly still owing on the loan, and threatening legal action.

On or about April 11, 1997, Plaintiff entered into an oral reaffirmation agreement with Defendant to pay Defendant $500 to "pay off" the pre-petition Loan, in order to stop Defendant from calling Plaintiff's place of employment. Plaintiff then paid Defendant $500 from wages she received after the commencement of her bankruptcy. Defendant did not file a reaffirmation agreement with the Bankruptcy Court, nor did Defendant receive approval by the Bankruptcy Court for the reaffirmation agreement.

Plaintiff alleges that Defendant's actions in coercing Plaintiff to agree to a reaffirmation agreement, collecting monies pursuant to the reaffirmation agreement, and failing to file the agreement with the Bankruptcy Court or to obtain approval of the Bankruptcy Court were unlawful for the following reasons: (1) The automatic stay provision of the Bankruptcy Code provides that the filing of a petition for relief under the Code[2] precludes any act by a creditor to obtain possession of property of the estate, or to collect, assess, or recover a claim against the debtor that arose prior to the filing; (2) a bankruptcy discharge enjoins the commencement or continuation of an action or an act to collect on a debt; (3) an agreement to reaffirm a pre-petition debt is only enforceable under narrow circumstances not met by Defendant in this case; and (4) the California Business and Professions Code forbids unfair practices in the collection of debts.

## III. DISCUSSION

### A. Plaintiff's Motion for Class Certification

#### 1. Preliminary Considerations

Before discussing the merits of this motion, some preliminary comments are in

order. First, the Court notes that, although debtors' class actions in bankruptcy are uncommon, class actions are not uncommon in consumer protection cases. This is because the claims of individual consumers are often too small to justify individual lawsuits, and because of the importance of educating the public of the obligations which creditors owe them as credit customers. *See, e.g., Watkins v. Simmons and Clark, Inc.,* 618 F.2d 398, 404 (6th Cir.1980) (discussing legislative revisions to the Truth in Lending Act, which encourage the use of class actions to enforce the Act); *Duran v. Credit Bureau of Yuma, Inc.,* 93 F.R.D. 607, 610 (D.Ariz. 1982) (discussing Fair Debt Collection Practices Act).

Second, the issues in a class certification motion are of a limited and transient nature:

> Under Fed.R.Civ.P. 23(c)(1), a class must be certified as soon as practicable after commencement of the action, and is made conditional and subject to alteration, to the creation of sub-classes, Rule 23(c)(4)(B), or indeed to decertification as the suit progresses and newly discovered facts warrant.

*Blackie v. Barrack,* 524 F.2d 891, 897 (9th Cir.1975). Thus, class certification under Rule 23 is a preliminary ruling and is subject to modification. *See Weinberger v. Jackson,* 102 F.R.D. 839, 843 (N.D.Cal. 1984). Further, a district court must not consider the merits of the action when determining whether class certification is appropriate. *See Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Blackie v. Barrack,* 524 F.2d at 901.

Having noted all that, however, a district court should determine that the proposed class representative is part of the

2. References to "the Code" refer to the United States Bankruptcy Code unless otherwise noted.

class and suffered the same injury as the putative class members. *See General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). As the party seeking class certification, the burden is on Plaintiff to establish a prima facie showing of each of the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure and to establish an appropriate ground for class action under Federal Rule of Civil Procedure 23(b). *See Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992); *Blackie v. Barrack,* 524 F.2d at 901. Plaintiff can meet this burden by providing the Court with a sufficient basis for forming a "reasonable judgment" on each requirement. *See Blackie,* 524 F.2d at 901.

■ Notwithstanding the general prohibition against examining the merits, some canvassing of the facts is permissible. As the Supreme Court stated, "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting *Mercantile Nat. Bank at Dallas v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963)).

In addition, the Ninth Circuit has noted that "[w]hile the court may not put the plaintiff to preliminary proof of his claim, it may require sufficient information to form a reasonable judgment. Lacking that, the court may request the parties to supplement the pleadings with sufficient material to allow an informed judgment on each of the Rule's requirements." *Blackie v. Barrack,* 524 F.2d at 901 n. 17 (9th Cir.); *see also Lim v. Citizens Sav. & Loan Ass'n,* 430 F.Supp. 802, 808 (N.D.Cal.1976) (quoting *Price v. Lucky Stores, Inc.,* 501 F.2d 1177, 1179 (9th Cir.1974)).

The Court will now turn to Plaintiff's motion for class certification.

### 2. *Federal Rule of Civil Procedure 23*

Federal Rule of Civil Procedure 23(a) sets forth the basic prerequisites which must be established before any action can be maintained as a class action:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These requirements are usually referred to as numerosity, commonality, typicality, and adequacy of representation.

#### (a) Numerosity

■ In order to satisfy numerosity, Rule 23(a) requires that the class be so numerous that joinder of all members is impracticable. Plaintiff's argument for numerosity boils down to the following: because NationsCredit is a major creditor with operations nationwide, one may reasonably infer that quite a large number of people across the country hold accounts with NationsCredit. Out of that vast number of people, one may reasonably infer that a smaller, but still quite significant number of people have filed for bankruptcy relief. Plaintiff further infers from the above that based upon NationsCredit's maltreatment of her, one can assume that NationsCredit has unlawfully harassed a significant number of debtors into assenting to unenforceable reaffirmation agreements. However, to this point Plaintiff has failed to produce even one other similarly situated person.

Plaintiff's argument that a similar case against Sears revealed nearly 3,000 persons in Massachusetts "who were victims of Sears' debt collection practices" cannot permit this Court to assume that the same

would be true of NationsCredit. Therefore, Plaintiff has failed to meet her burden in showing numerosity.

This does not destroy all hope for Plaintiff's eventual certification of a class. Discovery might well reveal information to support numerosity. Therefore, this Court will deny Plaintiff's motion for class certification without prejudice. Plaintiff has leave to refile at a later date, when and if she can demonstrate that the class is so numerous that joinder of all members is impracticable.

### B. *Defendant's Motion to Dismiss*
#### 1. Legal Standard

A motion to dismiss will be denied unless it appears that the plaintiff can prove no set of facts which would entitle her or him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246 (9th Cir.1997); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *See NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Moreover, "[t]o dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Plaine v. McCabe,* 797 F.2d 713, 723 (9th Cir.1986).

Defendant argues that Plaintiff's claims must fail as a matter of law for the following reasons: (1) Rogers fails to state a claim for violation of the automatic stay; (2) Rogers fails to state a claim for violation of the discharge; (3) Rogers' allegations are consistent with redemption of collateral, not reaffirmation of debt; and (4) Rogers' state law claims are preempted by federal law. In addition, Defendant argues that Rogers lacks standing to assert her causes of action on behalf of a class, because she is not a member of the class she seeks to represent. The Court will address these arguments below.

#### 2. Defendant's argument that Rogers fails to state a claim for violation of the automatic stay.

Defendant argues that Rogers fails to state a claim for violation of the automatic stay because she does not allege sufficient facts to constitute a violation, she does not allege injury resulting from the purported violations, and the termination of the stay precludes injunctive relief. Defendant's reasoning, however, is unconvincing. As will be explained, all of these arguments must fail.

#### (a) Rogers successfully raises genuine issues of material fact as to whether Defendant's conduct constituted a violation of the automatic stay.

Section 362 of the Bankruptcy Code provides, *inter alia,* that a bankruptcy petition filed under that title operates as a stay, applicable to all entities, of any act to enforce a lien against property of the estate, or any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. 11 U.S.C. § 362(a)(4) & (6). Actions taken in violation of the automatic stay are void. *Morgan Guar. Trust Co. of New York v. American Sav. & Loan Ass'n,* 804 F.2d 1487, 1490 (9th Cir.1986) *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987) (citing *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.),* 754 F.2d 811, 816 (9th Cir. 1985)). Although § 362(a) stays acts that immediately or potentially threaten the debtor's possession of its property, mere presentment and other requests for payment unaccompanied by coercion or harassment are not barred by § 362(a). *Id.* at 1491. *See also Murray v. Great Valley Savings Ass'n. (In re Murray),* 89 B.R. 533, 534–37 (Bankr.E.D.Pa.1988).

Defendant argues that, even if true, Plaintiff's claim that Defendant sent her a proposed reaffirmation agreement and urged her to sign it cannot, in and of itself,

state a claim for violation of the automatic stay. However, Defendant completely ignores Plaintiff's allegations that Defendant called her "regularly and repeatedly" at her place of employment in an attempt to intimidate her into signing the reaffirmation agreement. Complaint at par. 13.

The Ninth Circuit has repeatedly referred to the purpose behind § 362(a) in deciding cases alleging violations of this provision: "The automatic stay is intended to give 'the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions.'" *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 226 (9th Cir.1989) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5840). "The statute seeks to ensure orderly administration of the debtor's estate to protect the creditors' right to equality of distribution ... to provide a breathing spell for the debtor ... to maintain the status quo ... [and] to prevent harassment of the debtor by sophisticated creditors." *Morgan Guaranty Trust Co. of New York v. American Sav. & Loan Ass'n.*, 804 F.2d at 1490 (citations omitted).

Plaintiff alleges that she was subject to repeated phone calls by Defendant at her place of employment demanding that she sign the reaffirmation agreement, during the time at which the automatic stay was in force. This raises a genuine issue of material fact as to whether Defendant's conduct violated § 362(a).[3] The Court will therefore not dismiss this claim.

**3.** Defendant also argues as a defense to its alleged violation of § 362(a) that Plaintiff failed to comply with Bankruptcy Code § 521(2). Section 521(2) requires a debtor to file with the Bankruptcy Clerk a statement of her intention to retain or surrender property of the estate securing consumer debts, in this case, NationsCredit's collateral for the loan. However, this argument is unconvincing. Defendant does not dispute that Plaintiff listed as a pre-petition debt on her bankruptcy petition the Loan from NationsCredit, nor does Defendant claim ignorance of Plaintiff's filing of bankruptcy. Further, even if Plaintiff

**(b) Rogers did not fail to allege injury resulting from violations of the automatic stay.**

The Bankruptcy Code requires that an individual seeking to recover actual damages for injuries caused by willful violations of the automatic stay must allege and prove both a willful violation and injury. 11 U.S.C. § 362(h). Defendant argues that, because Rogers admits that she refused to sign the reaffirmation agreement sent to her by NationsCredit, she failed to allege injury caused by violation of the stay. Plaintiff's Complaint clearly states on its face, however, that during the duration of the stay and after, Plaintiff was harassed by Defendant at her place of employment until she agreed to pay Defendant $500, and she did pay Defendant $500. Plaintiff has alleged injury.

**(c) The termination of the stay in Rogers' case does not preclude injunctive relief against Defendant.**

The automatic stay in Rogers' case terminated when Rogers was discharged and her bankruptcy case was closed by the Bankruptcy Court's January 9, 1997 order. Defendant argues that this entirely precludes this Court from enforcing an automatic stay against Defendant. However, the fact that the stay has terminated in Roger's bankruptcy case has no bearing on the availability of injunctive relief for the class, should a class eventually be certified. Therefore, any claim for injunctive relief seeking enforcement of the automatic stay should be dismissed without prejudice.[4]

did violate § 521(2) of the Bankruptcy Code, Defendant fails to cite any law in support of its contention that Plaintiff's violation of § 521(2) could somehow excuse Defendant from the required compliance with § 362(a).

**4.** Plaintiff's Complaint seeks relief enjoining Defendant from enforcing the Reaffirmation Agreements, and enjoining Defendant from engaging in Unfair Business Practices. Defendant's arguments don't address these prayers for relief, and so the Court will not speak to them in this Order.

Defendant also adds a footnote alleging that Plaintiff lacks standing to seek a claim for relief for violation of the automatic stay, as such relief is property of the estate and thus the claim must be brought by the Trustee. Defendant is mistaken. As noted above, a primary purpose of the automatic stay provision of § 362 is to protect the interests of the *individual debtor*. If anything, the law questions whether a Trustee even qualifies as an "individual" eligible to bring suit under § 362.[5]

### 3. Rogers states a claim for violation of the discharge.

Section 524(a)(2) provides that:

[a] discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2). Plaintiff alleges that Defendant violated that injunction by attempting to collect on the Loan following the Bankruptcy Court's discharge of Plaintiff's claims.

Defendant argues that Plaintiff has failed to state a claim for violation of the discharge. To do this, Defendant recharacterizes the reaffirmation agreement as "redemption of collateral." The Code provides that a debtor may redeem collateral that has either been exempted under § 522, or abandoned under § 554(c), "by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien." Defendant

asserts that this is what Plaintiff did when Plaintiff paid the Defendant $500.

Further, Defendant argues that Plaintiff *cannot* claim that the agreement was a reaffirmation agreement, because Plaintiff failed to plead the "elements" of a reaffirmation agreement required by the Bankruptcy Code. However, Defendant is merely engaging in semantic gymnastics. What Defendant has portrayed as "the required elements" for Plaintiff to demonstrate a reaffirmation agreement are merely the Code's requirements for *enforceability* of a reaffirmation agreement. They do not define what a reaffirmation agreement *is*.

The definition of a reaffirmation agreement provided by the Code is simply "an agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title." 11 U.S.C. § 524(c). In fact, prior to enactment of the Bankruptcy Code, such reaffirmation agreements were enforceable under traditional contract law even absent new consideration or detrimental reliance. *See, e.g., Zavelo v. Reeves*, 227 U.S. 625, 629, 33 S.Ct. 365, 57 L.Ed. 676 (1913).

Sections 524(c) & (d) of the Code put forth the requirements to enforce a reaffirmation agreement: 1) the agreement must be executed before the discharge is granted; 2) the agreement must include a clear and conspicuous statement of the right to rescind; 3) the agreement must be filed with the Court; 4) the debtor must have the right to rescind; and 5) if the debtor is an individual and not represented by an attorney, the court must approve the agreement as in the debtor's best interests. 11 U.S.C. 524(c) & (d).[6] If

---

5. Section 362(h) provides that "[a]n *individual* injured by any willful violation of a stay provided by this section shall recover actual damages . . . ." (emphasis added). The Ninth Circuit has struggled with the question of whether a bankruptcy Trustee can be an "individual" entitled to § 362(h) relief, and has decided it cannot. *See In re Pace*, 67 F.3d 187, 192–93 (9th Cir.1995). Common sense dictates then that the individual intended to

benefit from the provisions of § 362(h) is the debtor herself.

6. 11 U.S.C. 524(c) & (d) read as follows:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankrupt-

a reaffirmation agreement fails in any of these respects, it is still a reaffirmation agreement; it is simply an unenforceable one, and void. *Republic Bank v. Getzoff (In re Getzoff)*, 180 B.R. 572, 573 (9th Cir. BAP 1995).

Defendant argues that if the above provisions are not met, the agreement cannot be called a "reaffirmation agreement" at all. However, if Defendant's reasoning were to stand, any creditor could completely circumvent the debtor protections of the Bankruptcy Code by simply con-

structing reaffirmation agreements that do not comply with the Code specifications above and naming them something besides "reaffirmation agreements." Obviously, this is not the case.

■ The rules governing enforcement of reaffirmation agreements are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1167–68 (6th Cir.1985); *In re Fernandez–Lopez*, 37 B.R. 664, 667

cy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

(2)(A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and

(B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of—

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement;

(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(5) the provisions of subsection (d) of this section have been complied with; and

(6)(A) in a case concerning an individual who was not represented by an attorney

during the course of negotiating an agreement under this subsection, the court approves such agreement as—

(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor.

(d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, 1228, or 1328 of this title, the court may hold a hearing at which the debtor shall appear in person. At any such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section and was not represented by an attorney during the course of negotiating such agreement, then the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall—

(1) inform the debtor—

(A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

(B) of the legal effect and consequences of—

(i) an agreement of the kind specified in subsection (c) of this section; and

(ii) a default under such an agreement; and

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.

11 U.S.C. 524(c) & (d).

n. 1 (9th Cir. BAP 1984) (citing 3 Collier on Bankruptcy (MB) Par. 524.03 at 524–19 (15th ed.1981)). To follow Defendant's reasoning would stand this policy on its head.[7]

Plaintiff's Complaint alleges on its face that she and Defendant entered into a reaffirmation agreement when defendant agreed to accept $500 in payment of the NationsCredit Loan listed on her Bankruptcy Petition. It was an "agreement . . . the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title". 11 U.S.C. § 524(c). Therefore, Defendant's attempt to recharacterize it as a "redemption of collateral" must fail.

### 4. Rogers may maintain a private right of action under § 524.

■ Defendant argues that Rogers' claims for violation of the discharge must be dismissed, as there is no private right of action under § 524. It appears from the case law that debtors have rarely attempted to pursue a cause of action for damages for violation of the bankruptcy discharge outside of the bankruptcy proceeding itself. Courts are divided in their decisions whether a private right of action is permitted under § 524,[8] and the Ninth Circuit has not provided any guidance on this issue. It is true that, unlike § 362, § 524 does not explicitly provide for an individual damages remedy. However, our analysis may not end there.

7. The Defendant makes substantially the same argument in alleging that the Plaintiff lacks standing to represent her proposed class, saying that Plaintiff cannot be a part of a class composed of people who "entered into one or more reaffirmation agreements with the named Defendant" if the agreement she describes is not a "reaffirmation agreement." The issue of class certification is currently moot; however, the Court hopes Defendant will choose not to raise this spurious argument in the future, should the issue come before the Court again.

8. For cases denying a private right of action, see e.g., *In re Costa*, 172 B.R. 954 (Bankr. E.D.Cal.1994); *Perovich v. Humphrey*, 1997 WL 674975 (N.D.Ill.1997); *In re Sullivan*, 90

The United States Supreme Court guides how we must analyze the question of whether a statute creates a private right of action: "[t]he most important inquiry . . . is whether Congress intended to create the private remedy sought by the plaintiffs." *Suter v. Artist M.*, 503 U.S. 347, 364, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (citing *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146, (1979)).

Our focus on congressional intent does not mean that we require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action. The implied cause of action doctrine would be a virtual dead letter were it limited to correcting drafting errors when Congress simply forgot to codify its evident intention to provide a cause of action. Rather, as an implied cause of action doctrine suggests, "the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question." *Cannon v. University of Chicago*, 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979). We therefore have recognized that Congress' "intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." *Transamerica Mortgage Advis-*

B.R. 307 (M.D.Tenn.1988). For cases indicating it is permissible, see e.g. *Wiley v. Mason (In re Wiley)*, 224 B.R. 58 (Bankr.N.D.Ill. 1998) (determining that court may award remedial sanctions and punitive damages for violations of discharge injunction); *In re Latanowich*, 207 B.R. 326 (Bankr.D.Mass.1997) (awarding compensatory and punitive damages for contempt of discharge order); *In re Walker*, 180 B.R. 834 (Bankr.W.D.La.1995) (awarding compensatory and punitive damages for deliberate violation of discharge order); *Behrens v. Woodhaven Ass'n*, 87 B.R. 971, 976 (Bankr.N.D.Ill.1988) (awarding actual damages and attorney's fees); *In re Roush*, 88 B.R. 163 (Bankr.S.D.Ohio 1988) (same).

*ors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979). The intent of Congress remains the ultimate issue, however, and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981).

*Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).

As noted above, § 524 does not explicitly provide for an individual damages remedy as is provided in § 362(h). Some courts have interpreted this omission as indicating an implicit legislative intent to deny such a remedy. *See, e.g., In re Costa,* 172 B.R. 954, 966 (Bankr.E.D.Cal.1994); *Perovich v. Humphrey,* 1997 WL 674975, \*3 (N.D.Ill.1997). However, Congress added the private right of action for violation of § 362(h) in 1984, while § 524 was enacted much earlier, in 1978. Therefore, it seems tenuous at best to infer legislative intent from that omission.

Further, the legislative history of § 524 indicates that Congress' goal in enacting that section was to provide powerful legislation to protect debtors in bankruptcy from the very same harassing practices alleged by Plaintiff in this action. The House Report states:

> [U]nsuspecting debtors are led into binding reaffirmations, and the beneficial effects of a bankruptcy discharge are undone. The advantages sophisticated and experienced creditors have over unsophisticated debtors in this area ... still remain. The unequal bargaining position of debtors and creditors, and the creditors' superior experience in bankruptcy matters still lead to reaffirmations too frequently. To the extent that reaffirmations are enforceable, the fresh start goal of the bankruptcy laws is impaired.
>
> ...

> [This] bill will prevent the postbankruptcy harassment that frequently takes place now by prohibiting creditor attempts to collect a discharged debt .... Frequently a finance company takes a security interest in the debtor's household and personal goods .... A threat of repossession is a very effective tool in getting at the debtor to reaffirm for the full amount of the debt due, even though the market value of the goods involved is far below the amount of the debt....
>
> ...
>
> This provision is a significant factor in making bankruptcy relief an effective remedy. It ensures that a debtor will not come out of bankruptcy in the same situation as when he went in.

H.R.Rep. No. 95–595, at 163, reprinted in 1978 U.S.C.C.A.N. 5963, 6124.

Finally, in enacting § 105(a) of the Bankruptcy Code, Congress provided the courts with very broad authority to enforce the provisions of the Code: "The court may issue *any order, process, or judgment that is necessary or appropriate* to carry out the provisions of this title." 11 U.S.C. § 105(a). Thus, Congress consciously imbued the courts with the authority to construct appropriate remedial measures of enforcement. Therefore, permitting a private right of action under § 524 is consistent with the legislative goals of Congress in enacting that provision, and this Court will not dismiss Plaintiff's claim for violation of the discharge injunction on that basis.

### 5. Rogers' State Law Claims are Preempted

Rogers brings a claim against Defendant under the California Business and Professions Code §§ 17200 *et seq.* for unfair business practices. Defendant moves to dismiss this claim based on federal preemption. Federal law preempts state law where (1) the state law conflicts with federal law; (2) the federal law occupies a field, and the state law falls within the field; or (3) federal law expressly

preempts state law. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516–17, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987).

 The Ninth Circuit has previously held that federal law preempts a bankruptcy debtor's action for malicious prosecution against a creditor. *See MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 916 (9th Cir.1996); *see also Gonzales v. Parks,* 830 F.2d 1033, 1035–37 (9th Cir.1987) (state-law abuse of process remedy cannot be used against a person who files a federal bankruptcy petition). The Ninth Circuit's reasoning in *MSR Exploration* applies equally to the case at hand. The *MSR Exploration* Court noted that Congress has established several remedies for improper use of bankruptcy procedures, and that permitting parties to proceed on a myriad of state law remedies would undermine attempts to achieve uniformity in this area of the law. *MSR Exploration,* 74 F.3d at 914–15. Therefore, this Court will dismiss Plaintiff's claim under the California Business and Professions Code as preempted by federal law.

## IV. *CONCLUSION*

For the foregoing reasons, this Court orders the following:

1) Defendant's motion to dismiss Plaintiff's claims is DENIED EXCEPT as to the following:

 a) Defendant's motion to dismiss Plaintiff's claim for injunctive relief seeking enforcement of the automatic stay is GRANTED WITHOUT PREJUDICE;

 b) Defendant's motion to dismiss Plaintiff's claim under California Business and Professions Code § 17200 is GRANTED.

2) Plaintiff's motion for class certification is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.