

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>BRADLEY EDWARD KOEBERER and<br>NANCY LOUISE KOEBERER,<br>          Debtors. | BAP No. NC-21-1078-FBS<br><br>Bk. No. 20-10514 |
| BRADLEY EDWARD KOEBERER;<br>NANCY LOUISE KOEBERER,<br>          Appellants,<br>v.<br>CALIFORNIA BANK OF COMMERCE;<br>TIMOTHY W. HOFFMAN, Chapter 7<br>Trustee,<br>          Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Roger L. Efremsky, Bankruptcy Judge, Presiding

APPEARANCES:

Thomas Philip Kelly, III argued for appellants; Kevin E. Fusch of French
Lyon Tang argued for appellee California Bank of Commerce.

Before: FARIS, BRAND, and SPRAKER, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

**INTRODUCTION**

The bankruptcy court found that appellee California Bank of

Commerce (the "Bank") violated the automatic stay when it took certain postpetition steps in a prepetition action against chapter 7[1] debtors Bradley Edward Koeberer and Nancy Louise Koeberer and others. However, the court declined to sanction the Bank because the Koeberers did not establish that they suffered any injury. The Koeberers appeal the bankruptcy court's ruling, arguing that it is undisputed that the Bank knowingly violated the automatic stay, so the bankruptcy court was obligated to sanction the Bank and award them fees and costs.

The court correctly held that the Bank violated the automatic stay and that the Koeberers did not prove their entitlement to actual or punitive damages. But the court erred when it determined that the Koeberers lacked standing and denied attorneys' fees and costs because the violations were "technical," without making any finding as to the reasonableness of any of the claimed fees and costs. Accordingly, we AFFIRM most of the court's judgment, but we VACATE the denial of attorneys' fees and costs and REMAND for a determination of reasonableness.

We publish to confirm that (1) postpetition prosecution of a fraudulent transfer claim against nondebtor parties violates § 362(a)(1), (2) the bankruptcy court may not deny all § 362(k) sanctions merely because the violation of the automatic stay was "technical," and (3) the bankruptcy court may find that, in the circumstances of a particular case, a

___

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

reasonable attorneys' fee under § 362(k) is zero.

**FACTS[2]**

## A.    Prepetition litigation

The Koeberers and their adult son, Bryan Koeberer ("Bryan"), were the owners of Northern Pacific Corporation ("Northern"). In 2017, the Bank loaned Northern a total of $2.75 million. Northern offered the Bank security interests in all of its personal property. The Koeberers and Bryan personally guaranteed the loans.

In mid-2019, Northern defaulted on the loans. The Bank demanded full payment of the loan balance.

Around this time, the Koeberers created the Koeberer Irrevocable Trust dated May 17, 2019. According to the chapter 7 trustee, Timothy W. Hoffman ("Trustee"), the Koeberers transferred $125,000 and their residence in Sonoma, California to the trust via gift deed for no consideration. Mr. Koeberer's relative, John Koeberer ("John"), was named as trustee of the trust. The Koeberers' two adult children were named as the beneficiaries of the trust.

The Bank filed a complaint in California state court against Northern, Mr. Koeberer, Mrs. Koeberer, Bryan, John, as trustee of the Koeberer Irrevocable Trust, and another individual whose role is not relevant to this

---

[2] We exercise our discretion to review the bankruptcy court's docket in this case, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

appeal. The Koeberers and Bryan were represented by Aaron Hancock; John was represented by David Rosenbaum.

The state court complaint asserted various causes of action against the defendants. The sixth cause of action was for fraudulent conveyance under California's Uniform Voidable Transactions Act ("UVTA"), California Civil Code § 3439 et seq., against the Koeberers and John in his capacity as trustee. The Bank alleged that the Koeberers transferred their residence to John as trustee of their trust with actual intent to hinder, delay, or defraud the Bank.

## B.    The Koeberers' chapter 7 petition

The Koeberers filed a chapter 7 petition on September 20, 2020. They acknowledged that they transferred their Sonoma residence and $125,000 cash to the Koeberer Irrevocable Trust. They noted the pending state court litigation, scheduled the Bank's nonpriority unsecured claim, and listed the Bank on the creditors matrix.

A few days later, the Bank filed a notice of appearance and request for electronic notice in the bankruptcy case.

## C.    The alleged stay violation

On or around October 8, 2020, the Bank filed in the state court a Notice of Trial. The Notice of Trial was not limited to any specific causes of action, suggesting that trial would be held on all claims against all defendants. The proof of service indicated that the Notice of Trial was served on (1) Aaron Hancock as "Defendants' Attorney," (2) David S.

4

Rosenbaum as attorney for John, and (3) Bryan. At this time, Mr. Hancock had apparently sought to withdraw as attorney of record for the Koeberers and Bryan; although the state court had orally granted his request, no order had been entered yet.

Also on October 8, the Bank filed a Notice of Stay informing the state court that the action was stayed as to "Bradley and Nancy Louise Koeberer only." The state court apparently rejected the Notice of Stay because it was not filed by the party requesting the stay.

On October 23, John's attorney filed a notice of stay in the state court, based on the Koeberers' bankruptcy filing. Three days later, John's attorney filed an ex parte application to continue the trial date. The Bank did not oppose the motion to continue. At the hearing on that motion, the Bank apparently informed the state court that it did not intend to proceed against the Koeberers but intended to continue litigation against the remaining defendants.

On October 28, the Koeberers' bankruptcy counsel, Thomas P. Kelly III, e-mailed counsel for the Bank, contending that the Bank had violated the automatic stay by pursuing the state court action, "[s]pecifically . . . the sixth cause of action for fraudulent conveyance pursuant to Civil Code §[ ]3439." Counsel for the Bank responded approximately ten minutes later that the Bank was "not pursuing the claims against the Koeberes [sic]. We are entitled to pursue the separate claims against the trustee of the irrevocable trust, who is a named party, as the property is not property of

the bankruptcy estate." Mr. Kelly did not respond.

The state court vacated the trial date on November 16. The case remains pending, although there has been no significant activity.

## D.    Motion for contempt

On November 21, 2020, the Koeberers filed a motion for contempt ("Contempt Motion") against the Bank. They asserted that the Bank knew that the Koeberers had filed their petition on September 20, yet it filed the Notice of Trial in the state court on October 8 and served it on their attorney, Mr. Hancock. They also pointed out that the Bank's counsel indicated that the Bank would continue to prosecute the fraudulent transfer claim. They requested $5,000 plus attorneys' fees and costs.

In response, the Bank argued that it did not take any direct action against the Koeberers and only continued to pursue the remaining co-defendants. It acknowledged that it had served the Notice of Trial on Mr. Hancock but explained that it did so because Mr. Hancock was still attorney of record for Bryan. It also pointed out that it informed the state court that it did not intend to prosecute the state court action against the Koeberers and told Mr. Kelly via e-mail that it was not pursuing any claim against the Koeberers.

In their reply brief, the Koeberers contended that the Bank was not pursuing claims against only the co-defendants, because the claim for fraudulent transfer against John necessarily involved the Koeberers as indispensable parties.

6

After a series of hearings, the bankruptcy court denied the Contempt Motion and declined to award the Koeberers any damages. The court found that that the Bank knew of the existence of the automatic stay. It also found that the Bank filed the Notice of Trial but took no other action to advance the case. It reasoned that, under the Second Circuit's decision in *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131-32 (2d Cir. 1992), the Bank's actions may have amounted to a violation of the automatic stay, but it was only a technical violation at most and sanctions were not warranted.

The bankruptcy court further held that the Koeberers did not have standing to bring the Contempt Motion. The bankruptcy court reasoned that the UVTA claim belonged to the bankruptcy estate, so only the Trustee had standing to bring a motion for contempt based on violation of the automatic stay as to the sixth cause of action.

The Koeberers timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in denying the Contempt Motion for the Bank's violation of the automatic stay.

## STANDARDS OF REVIEW

"A bankruptcy court's determination that the automatic stay was

violated is a question of law subject to de novo review." *Yellow Express, LLC v. Dingley (In re Dingley)*, 514 B.R. 591, 595 (9th Cir. BAP 2014), *aff'd on other grounds*, 852 F.3d 1143 (9th Cir. 2017). Similarly, we review de novo the bankruptcy court's ruling regarding the debtor's standing to prosecute a claim for violation of the automatic stay. *See Advanced Ribbons & Off. Prods., Inc. v. U.S. Interstate Distrib., Inc. (In re Advanced Ribbons & Off. Prods., Inc.)*, 125 B.R. 259, 262 (9th Cir. BAP 1991) ("The debtor's standing to assert a violation of the automatic stay is also a legal issue subject to de novo review."). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review the amount of sanctions imposed for a willful violation of the stay, including an award of attorneys' fees and costs, for an abuse of discretion. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002) ("The amount of sanctions imposed for a willful violation of the stay is reviewed for an abuse of discretion."); *see Am.'s Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015) (en banc) ("[C]ourts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees." (citation omitted)).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's

application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

We review the court's underlying factual findings, including whether the violation was willful, for clear error. *Eskanos & Adler, P.C.*, 309 F.3d at 1213. Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

## DISCUSSION

### A.     The Bank violated the automatic stay.

The Koeberers argue that the bankruptcy court erred in denying the Contempt Motion because the Bank knew of the automatic stay yet chose to actively pursue them in the state court action. The bankruptcy court held that the Bank violated the automatic stay when it served the Notice of Trial and sought to pursue the UVTA claim. The court went on to characterize the violation as technical. We agree with the first part of this holding but disagree with the second.

The filing of a chapter 7 petition automatically creates an estate containing all legal and equitable interests of the debtor in property as of the commencement of the case. The trustee administers the estate and is the

9

representative of the estate. *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d 1168, 1173 (9th Cir. 2014).

The filing of a petition also gives rise to the automatic stay that "effect[s] an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Id.* (quoting *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993)).

The subsections of § 362(a) describe the actions that are subject to the automatic stay. The relevant subsections are § 362(a)(1) and (a)(3). Subsection (a)(1) provides that a bankruptcy petition operates as a stay of:

> **the commencement or continuation . . . of a judicial**, administrative, or other **action or proceeding against the debtor** that was or could have been commenced before the commencement of the case under this title, **or to recover a claim against the debtor** that arose before the commencement of the case under this title[.]

§ 362(a)(1) (emphasis added). Section 362(a)(1) thus applies to two types of actions. The first clause applies to any action against the debtor that was filed, or could have been filed, before the bankruptcy filing. The second clause applies to any action to recover a claim against the debtor that arose prepetition.

Subsection (a)(3) provides that the stay also applies to "any act to obtain possession of property of the estate or of property from the estate or

10

to exercise control over property of the estate[.]"

Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." "A willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional." *Eskanos & Adler, P.C.*, 309 F.3d at 1215.

The movant "bears the burden of proving, by a preponderance of the evidence, that she suffered damages caused by the stay violations. A debtor must support a claim for damages with reasonable certainty." *Moore v. Ass'n of Apartment Owners of the Windsor (In re Moore)*, 488 B.R. 120, 127-28 (D. Haw. 2013) (citations omitted).

1. **The Bank was aware of the automatic stay.**

There is no dispute that the Bank knew of the automatic stay and knew that it applied to at least part of its state court complaint against the Koeberers. The Bank received notice of the bankruptcy petition and filed an appearance and a request for electronic notification in the bankruptcy court. It also filed a notice of stay in the state court action (which was rejected) and told the state court that it was aware of the bankruptcy case and would not pursue the state court action as to the Koeberers.

2. **The Bank violated the automatic stay by "continuing" the state court action.**

Despite knowledge of the automatic stay, the Bank filed the Notice of

11

Trial and intended to prosecute the UVTA claim against the Koeberers' co-defendants. We agree with the bankruptcy court that these acts violated the automatic stay.

### a. The Bank violated § 362(a)(1).

By filing the Notice of Trial, the Bank violated the first clause of § 362(a)(1) because doing so "continu[ed] . . . a judicial . . . action or proceeding against the debtor that was . . . commenced before" the Koeberers commenced their bankruptcy case. Filing the Notice of Trial changed the status quo that existed when the Koeberers filed their bankruptcy petition because it stated that the case would go to trial on a specific date, presumably against all parties and on all causes of action. *Cf. Perryman v. Dal Poggetto (In re Perryman)*, 631 B.R. 899, 904 (9th Cir. BAP Oct. 8, 2021) (stating that actions that do not disturb the status quo are not violative of the automatic stay).

In an apparent attempt to avoid a violation, the Bank also filed a Notice of Stay that the automatic stay applied to the Koeberers. But the state court's refusal to accept the notice thwarted this attempt. The state court's reason for doing so was incorrect, but the Bank's failure to do anything in response for several weeks is both unexplained and unexcused. As a result, the case was set to proceed on all claims and against all parties. In short, the Notice of Trial was an act to continue the case against the Koeberers in violation of § 362(a)(1).

Filing the Notice of Trial also violated the second clause of § 362(a)(1)

12

because prosecuting the claims under the UVTA was the "continuation . . . of a judicial . . . action or proceeding . . . to recover a claim against the debtor that arose before the commencement of" the Koeberers' bankruptcy case. The Bank made no attempt to rectify this violation. Instead, the Bank insisted that there was no violation at all because the stay did not apply. The Bank was wrong. As the Second Circuit held in *Colonial Realty*:

> Section 362(a)(1) provides that actions "against the debtor" or "to recover a claim against the debtor" are subject to the automatic stay. The latter category must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage. Upon analysis, a third-party action to recover fraudulently transferred property is properly regarded as undertaken "to recover a claim against the debtor" and subject to the automatic stay pursuant to § 362(a)(1).

980 F.2d at 131-32. It concluded that a fraudulent transfer claim was subject to the automatic stay because "it is an 'action . . . to recover a claim against the debtor' within the meaning of § 362(a)(1)." *Id.* at 132.

We agree with the bankruptcy court that *Colonial Realty* was well-reasoned and that the Ninth Circuit would follow it. *See* 5 Collier on Bankruptcy § 548.01[2][b][i] (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing *Colonial Realty* and stating that § 362(a)(1) "has been held to apply to a creditor's fraudulent transfer action against a transferee from the debtor to the extent that the action seeks satisfaction of a claim against the debtor. The argument here is that the creditor's action is an effort to collect

13

a claim owed by the debtor, and thus is stayed by the express wording of paragraph (1).").[3]

The bankruptcy court correctly held that the Bank's actions violated § 362(a)(1).

### b. The Bank violated § 362(a)(3).

The Bank also violated subsection (a)(3) by continuing to pursue the UVTA claim, because that claim belonged to the Koeberers' bankruptcy estate.

A fraudulent conveyance action becomes property of the estate upon the filing of a bankruptcy petition. *See In re Mark One Corp.*, 619 B.R. 423, 439 (Bankr. E.D. Cal. 2020) (holding that recovery on an action for "preferences or fraudulent conveyances" "is clearly within the rights of the bankruptcy estate to recover fraudulent conveyances"). "The trustee's

---

[3] The Koeberers argue that the Bank's pursuit of the UVTA claim also violated the first clause of § 362(a)(1) because they were indispensable parties to that claim. We disagree. Most courts hold that the transferor is not a necessary party to such an action. *See In re Silverman*, 603 B.R. 498, 502 (Bankr. D.N.M. 2019) (surveying nationwide decisions and concluding that "[c]ase law makes clear that the transferor is not a necessary party to an avoidance action brought against the transferee if the transferor did not retain any interest in the transferred property"); *Takiguchi v. MRI Int'l, Inc.*, Case No. 2:13-CV-01183-JAD-VCF, 2015 WL 13677808, at *2 (D. Nev. Jan. 23, 2015) (surveying cases and holding that "the weight of authority is that a transferor is indispensable only where he has retained an interest in the conveyed property"); *Still v. Hopkins (In re Hopkins)*, 494 B.R. 306, 315 (Bankr. E.D. Tenn. 2013) ("In a suit to set aside a fraudulent conveyance, the grantor is not an indispensable party defendant where he has retained no interest, either legal or equitable, in the property conveyed." (citation omitted)). But it does not matter because, as *Colonial Realty* makes clear, the second clause of § 362(a)(1) applies to actions to collect claims against the debtor regardless of whether the debtor is a party to the action.

standing to sue on behalf of the estate is exclusive; a debtor's creditors cannot prosecute such claims belonging to the estate absent abandonment." *Capriati Constr. Corp. v. SPER, Inc. (In re Capriati Constr. Corp.)*, BAP No. NV-17-1200-BHTa, 2018 WL 1404439, at *5 (9th Cir. BAP Mar. 20, 2018) (citing *Estate of Spirtos v. One San Bernardino Cnty. Super. Ct.*, 443 F.3d 1172, 1175 (9th Cir. 2006)).

The Notice of Trial stated that the entire case would proceed to trial. As to the UVTA claim against John, this was an act to "exercise control over property of the estate" that violated § 362(a)(3). *See id.* at *6 ("We conclude that [creditor's] fraudulent transfer claim asserted in the state court action was property of [chapter 11 debtor-in-possession's] bankruptcy estate by virtue of § 544(b) once [debtor] filed its bankruptcy petition, and such claim could only be pursued by [debtor-in-possession]."). The Bank never took any steps to reverse its position and comply with § 362(a)(3). Instead, the Bank doubled down on its position when its counsel confirmed to the Koeberers' counsel that the Bank would pursue the UVTA claim against John. It was only when the state court vacated the trial date that the Bank stopped pressing the UVTA claims.

Thus, the Bank also violated § 362(a)(3).

### 3. The bankruptcy court erred in holding that the Koeberers lacked standing to assert a stay violation.

The bankruptcy court also held that the Koeberers lacked standing to assert a stay violation based on the Bank's continued pursuit of the UVTA

15

claim, because the claim belonged to the bankruptcy trustee, and not the Koeberers. This decision was partly correct and partly erroneous.

We agree with the bankruptcy court that the Koeberers lacked standing to assert a violation of § 362(a)(3). The bankruptcy court correctly stated that the Koeberers did not own the UVTA claim. Rather, that claim belonged to the estate, represented exclusively by the trustee. *See, e.g., Zavala v. Wells Fargo Bank, N.A. (In re Zavala)*, 444 B.R. 181, 191 (Bankr. E.D. Cal. 2011) (holding, with regard to § 362(a)(3), that "[w]hile a debtor may seek recovery of damages when the automatic stay is violated as to that debtor, such a remedy does not grant the debtor 'co-trustee' like powers to control property of the estate. The Debtors may not assert rights of the bankruptcy estate against third-parties, such as the alleged claim for violating the automatic stay as it applies to property of the estate"). Thus, interference with the UVTA claim could have harmed only the estate and could not have subjected the Koeberers to any actual damages.

Nevertheless, § 362(a)(1) protected the Koeberers. When a creditor takes some action against the debtor, whom the automatic stay is meant to protect, the debtor has standing to raise a violation of the automatic stay. *See Rogers v. NationsCredit Fin. Servs. Corp.*, 233 B.R. 98, 106 (N.D. Cal. 1999) ("Defendant also adds a footnote alleging that Plaintiff lacks standing to seek a claim for relief for violation of the automatic stay, as such relief is property of the estate and thus the claim must be brought by the Trustee. Defendant is mistaken. As noted above, a primary purpose of the

16

automatic stay provision of § 362 is to protect the interests of the **individual debtor**.").

As we have noted, the automatic stay protected the Koeberers from any action to collect their prepetition debts, even actions to which they were not (or were not required to be) parties. § 362(a)(1). The Notice of Trial continued the state court action and appeared to be indiscriminately directed at all parties, including the Koeberers, concerning all causes of action. They had standing to protect their interests. *See James v. Wash. Mut. Sav. Bank (In re Brooks)*, 871 F.2d 89, 90 (9th Cir. 1989) (Congress "limited standing [under § 362] to those Congress designated as beneficiaries of the stay." (discussing *Magnoni v. Globe Inv. & Loan Co. (In re Globe Inv. & Loan Co.)*, 867 F.2d 556 (9th Cir. 1989))).

### 4. The court erred when it denied § 362(k) sanctions because the Bank's violations were "technical."

The bankruptcy court held that sanctions were not warranted because the Bank committed only technical violations of the automatic stay. It found that the Bank "took no other action to advance the sixth cause of action" and then "stood down."

The statement that "technical" violations are undeserving of sanctions under § 362(k) was error. Section 362(k) provides that the court "shall" award sanctions to "any individual injured" by "**any** willful violation of a stay provided by" § 362. § 362(k) (emphasis added); *see In re Schwartz-Tallard*, 803 F.3d at 1101 ("§ 362(k) is best read as authorizing an

17

award of attorney's fees incurred in prosecuting an action for damages under the statute. . . . § 362(k) makes such fee awards mandatory rather than discretionary . . . ."). While the moving party must show "injury," and the court may consider the severity of the violation when deciding the amount of sanctions, there is no category of violations so minor that it automatically negates the mandatory language of § 362(k).[4]

## B. The bankruptcy court did not err when it denied actual and punitive damages.

The bankruptcy court found that the Koeberers suffered no "actual damage" as a result of the Bank's violations. We discern no error. The bankruptcy court had discretion to withhold § 362(k) sanctions where the creditor's conduct was not egregious and the debtors allege that they "were inconvenienced and annoyed" but demonstrate "no actual damages."

---

[4] A violation of the automatic stay can also be a contempt of court. In such a case, a court may withhold all contempt remedies if the violation was "technical." *Cables & Accessories, Inc., v. Brewer (In re Cables & Accessories, Inc.)*, 92 F. App'x 435, 437 (9th Cir. 2004) (holding that "[t]he bankruptcy court did not abuse its discretion by refusing to hold Brewer in civil contempt for its technical violation of the automatic stay"). But § 362(k), and not the court's contempt powers, governs this case, and the plain language of that section does not permit an exception for "technical" violations.

This panel has expressed some support for "the idea that a technical violation of stay will not necessarily make that violation void." *Wash. Mut. Sav. Bank v. James (In re Brooks)*, 79 B.R. 479, 481 (9th Cir. BAP 1987), *aff'd on other grounds*, 871 F.2d 89 (9th Cir. 1989); *see also Jones v. Wingo (In re Wingo)*, 89 B.R. 54, 57 (9th Cir. BAP 1988) (stating in dicta that "[t]here are situations in which a technical violation of the stay will not necessarily render that violation void"). The Ninth Circuit has expressly "refrain[ed] from addressing the validity of the *Brooks* exception." *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 574-75 (9th Cir. 1992). This case does not present the issue of whether a transfer is void or voidable.

*McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168 (9th Cir. BAP 1995) (construing § 362(h), the predecessor of § 362(k)). Although the Koeberers' motion claimed $5,000 of actual damages, the Koeberers never offered any evidence at all that they suffered any actual harm, so the court was within its discretion to deny an award of actual damages. *In re Moore*, 488 B.R. at 127-28.

Similarly, the court did not err when it denied punitive damages. Although the Bank did not comply with the stay as quickly as it should have, the bankruptcy court was well within its discretion to hold that the Bank's conduct was not so egregious as to warrant punitive damages. *See Stinson v. Cook Perkiss & Lew, APC (In re Stinson)*, 128 F. App'x 30, 31-32 (9th Cir. 2005) ("Although § 362[(k)] permits the recovery of such damages 'in appropriate circumstances,' this court has cautioned that punitive damages are only appropriate if there has been 'some showing of reckless or callous disregard for the law or rights of others.' . . . . The bankruptcy court has considerable discretion in granting or denying punitive damages under § 362[(k)] . . . ."); *In re McHenry*, 179 B.R. at 168 (concluding that "no punitive damages should be awarded in the absence of actual damages . . . [because] the automatic stay afforded by section 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment . . . [and] [t]he incurrence of actual damage, a measurable event, serves as a basis for a determination of an appropriate punitive damage award. Where there is no actual damage, such measure

does not exist"); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003) ("[C]ourts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.").

## C.   The bankruptcy court did not explicitly determine the reasonableness (or unreasonableness) of the Koeberers' attorneys' fees and costs.

Section 362(k)(1) states that an individual injured by a stay violation "shall" recover "costs and attorneys' fees . . . ." Despite its mandatory language, this subsection is not a blank check. The Ninth Circuit has instructed that "[o]nly an award of fees reasonably incurred is mandated by" § 362(k)(1). *In re Schwartz-Tallard*, 803 F.3d at 1101; *see Stainton v. Lee (In re Stainton)*, 139 B.R. 232, 235 (9th Cir. BAP 1992) (discussing § 362(k)'s predecessor and stating that "[i]t is well established that the bankruptcy court has discretion to determine the reasonableness of the fees and costs and to set the amounts accordingly"); *In re Cowan*, 586 B.R. 337, 346 n.10 (Bankr. D. Idaho 2018) ("In deciding the appropriate amount of attorney's fees to award as a sanction for a discharge violation, the Court must determine 'what portion of those costs was reasonable as opposed to costs that could have been mitigated.'" (quoting *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 12 (9th Cir. BAP 2002))).

The bankruptcy court did not explicitly determine the reasonable amount of fees. Instead, the court denied all fees because it viewed the

20

Bank's violation as "technical." But the reasonableness of a legal fee does not necessarily depend entirely on the severity of the conduct that precipitated the legal work.

On this record, we cannot determine whether any particular amount of attorneys' fees would be reasonable. The Bank violated the stay by filing and serving the Notice of Trial eighteen days after the Koeberers filed their bankruptcy petition. We know that this was not inadvertent. In an apparent attempt to avoid or mitigate its violation, it simultaneously filed and served the Notice of Stay. But this was not entirely effectual because the state court refused to file it and because it did not withdraw the Notice of Trial as to the fraudulent transfer claims. The Bank did nothing to correct its error until after the Koeberers' counsel contacted its counsel. The record shows that, on October 27-29, 2020, the Koeberers' counsel billed for about six hours of time to analyze the stay issues and communicate with the Bank's counsel.[5] The state court trial was not continued until a few weeks later.

On this record, the bankruptcy court might find that at least a portion of the Koeberers' attorneys' fees were reasonably incurred to prevent or mitigate the Bank's stay violations. After all, the Bank persisted in its efforts to prosecute the fraudulent transfer claims, despite § 362(a)(3) and

---

[5] The relevant billing records are located in the appellants' excerpts of record at pages 551-52 or on the bankruptcy court's docket at ECF docket no. 46.

*Colonial Realty*, until the Koeberers' counsel contacted the Bank's counsel.[6] Alternatively, the bankruptcy court might find that the reasonable amount of the Koeberers' fees is zero because the Koeberers offered no evidence of actual damages and were not the primary targets of the fraudulent transfer claims. Because the reasonable amount of attorneys' fees is a factual question**,** *see Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 345 (9th Cir. BAP 1994) (declining to rule on "the reasonableness of the attorney fees awarded" because it is a "question[ ] of fact, not law . . ."), the bankruptcy court should address it in the first instance.

## CONCLUSION

The bankruptcy court did not err in finding that the Bank violated the automatic stay and denying an award of actual damages and punitive damages to the Koeberers under § 362(k). But the Koeberers had standing to address the stay violation against them, and the court denied the attorneys' fees claimed by the Koeberers without making any finding as to the reasonableness of any of the claimed fees and costs. Therefore, we

---

[6] The Bank argued that the bankruptcy court should deny fees because, by the time the Koeberers' counsel began drafting the Contempt Motion, the stay violations had ended. We do not endorse a blanket rule that fees are never available if the stay violation has ended before the fee motion is filed. Debtors and their counsel should be encouraged to contact creditors' counsel informally to secure compliance and only to file motions if informal efforts fail. The Bank's argument, if accepted, would give debtors' counsel a financial incentive to file fee motions at the earliest possible moment, before contacting the creditor. Furthermore, in this case, it remains a question of fact when the Bank ceased the stay violation and whether its termination of the stay violation was sufficiently conveyed to the Koeberers.

VACATE the denial of costs and attorneys' fees, REMAND for the bankruptcy court to determine the reasonable amount (if any) of the Koeberers' attorneys' fees, and AFFIRM in all other respects.