**In the Matter of William DUKE,**
**Debtor–Appellant.**

**No. 95–2029.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1995.

Decided March 15, 1996.

Scott C. Frost (argued), Blatt, Hasenmiller, Leibsker, Moore & Pellettieri, Chicago, IL, Joseph Kehoe, Wilson & McIlvaine, Chi-

cago, IL, Steven H. Kuh, Chicago, IL, for Appellee Sears, Roebuck & Company.

Robert J. Adams, Brian C. Pedersen (argued), Jennifer Hogarty, Adams & Associates, Chicago, IL, for debtor-appellant Duke.

Before POSNER, Chief Judge, and MANION and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Although bankruptcy is normally viewed as a process through which a debtor obtains relief from pre-petition obligations and gets a fresh start in life (financially, at least), things are not always that simple. This case presents a wrinkle that occurs when, during the bankruptcy proceeding, a creditor makes an offer to a debtor to reaffirm a pre-petition debt, in exchange for certain benefits. The debtor's lawyer here believes that the creditor was too heavy-handed in its tactics, and thus ran afoul of the automatic stay rule of 11 U.S.C. § 362(a). The district court disagreed and ruled that the creditor had played by the rules. We affirm.

On September 23, 1994, William Duke filed a Chapter 7 bankruptcy petition in which he listed Sears, Roebuck & Co. (Sears) as one of his creditors. Duke's filing triggered the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a)(6), which prohibits a creditor from engaging in "any act to collect, assess, or recover a claim against the debtor that arose before commencement of the case under this title." After it received notice of the automatic stay, Sears sent the following letter to Duke's attorney, with a copy to Duke himself "for information purposes":

Dear Robert L. Adams:

We have been notified that you are representing our customer in Chapter 7 bankruptcy proceedings.

There is a balance of $317.10 on this account.

Should your client elect to reaffirm the Sears account upon liquidation of the outstanding balance in accordance with the Reaffirmation Agreement, charge privileges will be reinstated with a line of credit in the amount of $500.00.

Enclosed are copies of the proposed Reaffirmation Agreement. Your courtesy and cooperation in this matter are greatly appreciated. Please let me know if we may be of further assistance.

Very truly yours,
K. Jaggers
Bankruptcy Representative
cc: Debtor (For information purposes only)

First before the bankruptcy court, then in the district court, and now here, Duke claimed that this letter amounted to an impermissible attempt to "collect, assess, or recover a claim" in violation of § 362(a)(6).

In essence, this case presents a question about the relation between the automatic stay of § 362(a)(6) and reaffirmation agreements, which are authorized and regulated by 11 U.S.C. § 524. A reaffirmation agreement is one in which the debtor agrees to repay all or part of a dischargeable debt after a bankruptcy petition has been filed. As one bankruptcy court explained it, "a reaffirmation agreement has the effect of reaffirming a debtor's preexisting in personam liability on the underlying obligations giving rise to the debt." *In re Walker*, 180 B.R. 834, 846 (Bankr.W.D.La.1995). See also *In re Grabinski*, 150 B.R. 427, 430 (Bankr. N.D.Ill.1993). The debtor choice to reaffirm creates a voluntary exception to the "fresh start" that bankruptcy otherwise confers. For that reason, the Bankruptcy Code contains various safeguards designed to assure that reaffirmations are genuine and that they are not the product of abusive creditor practices. See 11 U.S.C. § 524(d); Richard A. Hesse, *"Consumer Bankruptcy," Consumer Credit and Other Retail Banking Developments 1986*, PLI, Part VII; Ned W. Waxman, "Redemption or Reaffirmation: The Debtor's Exclusive Means of Retaining Possession of Collateral in Chapter 7," 56 U.Pitt. L.Rev. 187, 188 (1994); Collier on Bankruptcy, para. 524.04 (15th ed. 1995). See also *In re Edwards*, 901 F.2d 1383, 1386 (7th Cir. 1990) (reaffirmation is a fully voluntary negotiation on both sides).

The automatic stay provision of § 362, as noted above, generally prohibits the creditor from taking "any act" to collect pre-petition debts. Its purpose, as this Court explained in *Matthews v. Rosene*, 739 F.2d 249, 251

(7th Cir.1984), is "to benefit a debtor by preventing harassment and frustration of rehabilitation efforts through pursuit by creditors in individual actions." Taken to its logical extreme, § 362 could be construed to prohibit all contact between creditors and debtors after a petition has been filed, with respect to dischargeable debts. The courts have not pushed it that far, however, not least because to do so would create significant tension with the right to reaffirm. Instead, they have focussed on the anti-harassment purpose of § 362. The Court of Appeals for the Ninth Circuit found that "mere requests for repayment are not barred absent coercion or harassment by the creditor." *Morgan Guaranty Trust Co. v. American Sav. & Loan,* 804 F.2d 1487, 1491 & n. 4 (9th Cir.1986), cert. denied, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). The Third Circuit explained that the respite provided by § 362 "is not from communication with creditors, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit." *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 86 (3d Cir.1988).

This Court has not yet had the occasion to decide whether a creditor violates § 362(a)(6) when it sends a letter to a debtor offering to reaffirm a pre-petition debt. A majority of the bankruptcy courts have found that these actions do not violate § 362(a)(6) as long as the letter is nonthreatening and non-coercive. See, e.g., *In re Hazzard,* 1995 WL 110588 (Bankr.N.D.Ill.1995); *In re Jefferson,* 144 B.R. 620, 623 (Bankr.D.R.I.1992) (citing additional cases); see also *In re Epperson,* 189 B.R. 195, 198 (E.D.Mo.1995). Duke can prevail here only if we accept one of two propositions: (1) that all creditor-initiated offers to reaffirm debts violate § 362(a)(6); or (2) that offers to reaffirm in general are permissible if they are not threatening or coercive, but this one falls within the prohibited group.

As we note above, other courts have rejected the extreme reading of § 362(a)(6) that the first of these propositions would require, and we think rightly so. The option of reaffirming would be empty if creditors were forbidden to engage in any communication whatsoever with debtors who have pre-petition obligations. If that were the rule, it is also hard to see what purpose the detailed rules governing enforceability of reaffirmation agreements contained in § 524(c) would serve. By requiring a right to rescind, filing with the court, and an attorney's affidavit attesting that the debtor was fully informed, acted voluntarily, and that the agreement does not impose an undue hardship on the debtor, § 524(c) addresses the fairness of a completed reaffirmation agreement. The assumption behind these provisions is that debtors will be agreeing to enter into some reaffirmation agreements, and that it is important to have in place certain institutional protections to guard against creditor over-reaching. See Collier on Bankruptcy, para. 524.04 & n.2 (15th ed. 1995).

There is no reason to believe that reaffirmation agreements inevitably disadvantage debtors, and thus that the automatic stay should be used to protect debtors against this type of creditor effort to collect a pre-petition debt. Debtors might find the idea of a new credit relationship attractive, since this too can be part of a fresh financial start after bankruptcy. A line of credit can be a convenience for larger purchases, as the habits of millions of Americans so richly attest. See generally *Consumer Debt Grew by 9.3 percent Annual Rate in the Latest Month,* Wall St. J., Feb. 8, 1996, at A2 (as of Feb. 1996 consumer installment debt totaled almost $1,049 billion); Glen B. Canne, et al., *Payment of Household Debts,* Fed. Reserve Bull. 218 (1991) (debt-to-income ratio for consumer installment debt rose from fourteen percent in mid–1980 to nineteen percent in late 1989). Creditors, obviously, like the idea that bankruptcy may not result in a complete write-off of amounts due to them. Under both the rule that ensures that creditor offers to reaffirm are not coercive or threatening and the statutory protections of § 524(c), both parties can enjoy the legitimate benefits of reaffirmations, and the debtor is protected from abuse of the system.

In fact, perhaps recognizing the value of reaffirmations, Duke does not even argue here that all creditor letters should be considered forbidden by § 362. Instead, his attorney argues only that mailing a copy of

the offer directly to a represented debtor is banned by § 362. Duke's attorney conceded that Sears could have mailed a copy of the letter directly to Duke if Duke had not been represented. He also conceded that he, as Duke's lawyer, had a duty to show the offer to Duke whether or not Sears "cc'd" Duke. He could hardly say otherwise, given the fact that § 524(c)(3)(A) requires the attorney to declare in an affidavit that the debtor's consent to a reaffirmation agreement was "fully informed and voluntary," and Illinois Rule of Professional Conduct 1.4 requires an attorney to keep her client "reasonably informed about the status of a matter." Nothing in either § 362 or § 524 distinguishes between sending a letter to a debtor's attorney without any "cc," and sending a copy of the letter along to the debtor directly. Nothing, that is, unless we thought that sending a copy of the letter directly to the debtor was inherently coercive or threatening, or unless the letter itself had those characteristics.

Duke does not argue that this particular letter was threatening or coercive in its contents. It is true that the letter extends the "carrot" of the $500 line of credit for Duke if he decides to reaffirm the $317.10 debt and he pays it off. It is also true that the line between withholding of a benefit and imposition of a penalty can be elusive at times. Nevertheless, this letter is as bare-bones and straightforward as one can get. There is not a hint of unfavorable action that would be taken against Duke if he does not reaffirm. It does not even say that his chances of re-establishing credit with Sears would be prejudiced if he chooses not to reaffirm and then later seeks new credit after his discharge in bankruptcy. Under the circumstances, Duke was wise not to rely on this line of argument.

That leaves the possibility that it is inherently coercive to send a copy of a letter to an attorney directly to the debtor-client, for information purposes only (as the letter stated). The record is not clear as to whether "K. Jaggers, Bankruptcy Representative," was acting as an attorney for Sears or as an employee of the Sears collection department. If K. Jaggers was acting as an attorney or under the direction of an attorney, the Sears practice of "cc'ing" represented consumer debtors raises questions under the rules of professional conduct for attorneys. Illinois Rule of Professional Conduct 4.2 states generally that a lawyer should not communicate or cause another to communicate with a represented person unless the first lawyer obtains the prior consent of the second lawyer, "or as may otherwise be authorized by law." If K. Jaggers was acting purely as a debt collector, the practice Sears has adopted raises questions under the Fair Debt Collection Practices Act. 15 U.S.C. §§ 1692 et seq. Under § 1692c(a)(2), a debt collector may not communicate with a consumer, without the consumer's permission, "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain such attorney's name and address." In either case, there is no dispute that Sears knew that Duke was represented, and it knew the name and address of Duke's attorney. Duke, however, did not raise these points either in the lower courts or before this Court, and they are therefore not before us.

■ We conclude that the letter Sears sent to Duke did not violate the automatic stay provisions of § 362, nor does the Bankruptcy Code require as a matter of law that the creditor refrain from copying the debtor on correspondence to the debtor's attorney. We therefore AFFIRM the judgment of the district court.