Cheryl **BESSETTE** and Francisco Gonzalez, for themselves and on behalf of all others similarly situated, Plaintiffs,

v.

AVCO FINANCIAL SERVICES, INC., AVCO Financial Services Management Company, AVCO Financial Services of Rhode Island, Inc., AVCO Financial Services of Colorado, Inc., and John Does 1–10, Defendants.

No. 97–487L.

United States District Court, D. Rhode Island.

Oct. 19, 1999.

Daniel A. Edelman, Edelman & Combs, Chicago, IL, Christopher M. Lefebvre, Pawtucket, RI, for Plaintiffs.

A. William Loeffler, Mary Grace Diehl, Troutman Sanders LLP, Atlanta, GA, Deming E. Sherman, Patricia A. Sullivan, Marc A. Crisafulli, Edwards & Angell, Providence, RI, for Defendants.

*OPINION AND ORDER*

LAGUEUX, Chief Judge.

In this as yet uncertified class action, plaintiffs seek monetary relief from defendants for alleged violations of the Bankruptcy Code and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

In addition, plaintiffs have alleged a state law claim for unjust enrichment.

Specifically, plaintiffs' Second Amended Complaint seeks damages for alleged violations of the automatic stay and discharge injunction provided for by the Bankruptcy Code because of defendants' improper method of securing reaffirmation agreements of plaintiffs' pre-petition debt. Plaintiffs Second Amended Complaint also alleges that defendants used the mails to obtain revenues from the reaffirmation agreements thus violating RICO. In response, defendants have filed a motion to dismiss the seven Count Second Amended Complaint in its entirety. Although the alleged practices of defendants appear to abuse the carefully designed bankruptcy laws, this Court is unable to grant the relief sought by plaintiffs. For the reasons outlined below, this Court dismisses the complaint in its entirety. However, plaintiffs are granted leave to amend Count III only.

### I. *Background*

Plaintiff Cheryl Bessette resides in the District of Rhode Island. Francisco Gonzalez, the other named plaintiff, resides in California. Defendants are the various corporations which comprise the corporate group of Textron's finance division. Textron, although not a named defendant, is a global conglomerate holding company. The finance segment of Textron's business is delegated to AVCO Financial Services, Inc. ("AFS"), a wholly owned subsidiary of Textron, and its consumer finance subsidiaries (collectively "AVCO"). AFS conducts this consumer finance business through its various subsidiaries, including AVCO Financial Services of Rhode Island ("AFS–RI"), and AVCO Financial Services of Colorado, Inc. ("AFS–CO"). AVCO Financial Services Management ("AFS Management") is a wholly owned subsidiary of AFS which provides management services to AFS and its Unites States subsidiaries. Defendants John Does 1 through 10 are

unidentified individuals employed by AFS and/or its subsidiaries in charge of securing reaffirmation agreements from debtors. Many of these separate corporations within AVCO's corporate group share officers and directors.

On August 7, 1995, plaintiff Bessette and her husband filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the District of Rhode Island. *In re Bessette*, 95–11908 (Bankr.D.R.I.). One of Bessette's debt obligations was owed to AFS–RI for furniture that was bought on credit. On or about September 20, 1995, Bessette executed a reaffirmation agreement which was mailed to her by one of the defendants. This agreement was signed by both Bessette and her lawyer. The agreement purportedly required Bessette to pay $1500 plus interest in $100 monthly installments to "AVCO Financial Services" and be sent to an address in Colorado that belongs to AFS–CO. This agreement was never filed with the Bankruptcy Court for the District of Rhode Island as required by 11 U.S.C. § 524. In violation of § 524, the agreement states that if the debtor rescinds it, any payments made will be retained by the creditor. On or about November 2, 1995, the Bankruptcy Court issued a discharge order pursuant to 11 U.S.C. § 524, which relieved Bessette of all dischargeable debts including the AFS obligation. No payments were made to AFS by Bessette until May 1, 1996, after the discharge order was issued. *See* Second Amended Complaint, Exhibit C.

On November 13, 1996 plaintiff Francisco T. Gonzalez and his wife, Maria, filed a joint petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of California, Modesto Division. Gonzalez was not represented by counsel in that bankruptcy proceeding. In that bankruptcy case, Gonzalez listed an obligation to AFS of $411 for an extension of credit used to buy personal items. On or about December 20, 1996, Gonzalez executed a reaffirmation agreement that required him to pay AFS $20 per month against his outstanding debt to AFS. On February 20, 1997 the Bankruptcy Court entered a discharge order on all of Gonzalez's debts including the obligation to AFS. The reaffirmation agreement was not filed with the Court as required by § 524 of the Bankruptcy Code. Gonzalez's reaffirmation agreement also contained language indicating that AFS has the right to retain payments made in the event that the debtor rescinds which is a clear violation of § 524. Gonzalez made payments totaling $120 pursuant to the reaffirmation agreement.

As a result of this alleged conduct by defendants, plaintiffs bring this action against AVCO for violation of both the discharge injunction issued under § 524 of the Bankruptcy Code and the automatic stay which issued when the bankruptcy petitions were filed pursuant to 11 U.S.C. § 362(a). Plaintiffs' RICO and state law claims are also based on AVCO's conduct in securing the aforementioned reaffirmation agreements.

## II. *Standard of Review*

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir.1998). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); 5A Wright & Miller, *Federal Practice & Procedure* § 1357 (1990).

## III. *Subject Matter Jurisdiction and Venue*

■ Judge Mary Lisi of this Court has previously transferred a case raising these

issues to the Bankruptcy Court pursuant to the discretionary referral provisions contained in 11 U.S.C. § 157(a). *See McGlynn v. Credit Store, Inc.*, 234 B.R. 576, 579 (D.R.I.1999). This Court, however, chooses to decide these issues because it has jurisdiction over all cases under Title 11, and all civil proceedings "arising under," "arising in," or "related to" cases under Title 11 pursuant to 28 U.S.C. § 1334, and this area of the law should become settled as soon as possible.

The general venue statute is applicable in this case since plaintiffs have alleged violations of both the Bankruptcy Code and RICO. Venue is proper here under the general federal venue provisions because defendants reside in this district. The general venue statute, 28 U.S.C. § 1391(b) states that a "civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provide by law, be brought only in (1) a judicial district where any defendant resides..." The statute also states that for "purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Since defendants have admitted that personal jurisdiction exists here with regard to all defendants, this Court is an appropriate forum to hear plaintiffs' claims.

## IV. *No Private Right of Action Under § 524*

### A. *Applicable Law*

■ Defendants argue that plaintiffs' claims under § 524 of the Bankruptcy Code should be dismissed because that provision contains no private right of action. Whether there is a private cause of action under § 524 of the Bankruptcy Code is a question of first impression in this District. Plaintiffs argue that this Court ought to imply a private right of action under § 524 in the absence of an express grant of a private remedy. Sec-

tion 524 of the Bankruptcy Code provides in pertinent part:

Effect of discharge

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a liability of the debtor, whether or not discharge of such debt is waived;

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable ... only if—

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that such agreement—

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose an undue hardship on the debtor... 11 U.S.C. § 524

It is clear from the language of the relevant subsections that § 524 does not expressly contemplate a private action for damages. Because § 524 does not authorize a private cause of action on its face, there is no basis for plaintiffs' claims unless they can demonstrate that Congress intended to create an implied private right of action. *See Maldonado v. Dominguez*, 137 F.3d 1 (1st Cir.1998).

■ The United States Supreme Court has established a four part test for determining whether a court should imply a private remedy. Under *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) the four factors to consider are: (1) whether plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether there is any explicit or implicit indication of con-

# 154

gressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purpose of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law.

*Id.* at 78, 95 S.Ct. 2080 (citations omitted). Since *Cort,* the Supreme Court has explained and clarified the test's application. All four factors are not to be weighted equally. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). "The most important inquiry is whether Congress intended to create the private remedy sought by the plaintiffs." *Suter v. Artist M.,* 503 U.S. 347, 364, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (citing *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)).

This Court's focus on congressional intent does not mean that there must be evidence that members of Congress actually had in mind, when enacting the statute, the creation of a private remedy. Rather, the implied cause of action doctrine recognizes that Congress' "intent may appear implicitly in the language or structure of the statute, or in the circumstances of the enactment." *Transamerica,* 444 U.S. at 18, 100 S.Ct. 242. The intent of Congress remains the ultimate issue, however, and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981); *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).

Further, the United States Court of Appeals for the First Circuit has stated that there is a strong presumption against implying a private right of action. *See Maldonado,* 137 F.3d at 7 (citing *Sterling Suffolk Racecourse v. Burrillville Racing,* 989 F.2d 1266, 1268 (1st Cir.1993), *cert.*

*denied,* 510 U.S. 1024, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993)). In *Maldonado,* plaintiffs were seeking to have the court imply a private right of action under § 17(a) of the Securities Act of 1933. In holding that there is no private right of action under this provision, the Court noted that strong evidence of congressional intent must be present to overcome the presumption against implying a private right of action. *See id.* Without sufficient evidence of congressional intent to overcome this presumption, and "where the explicit remedies in the same statute address much of the same conduct and benefit the same parties as a potential implied private right of action, the circumstances militate against that inference." *Id.* at 7–8.

## B. Application of the Law to the Facts

In Counts I and II, plaintiffs allege that defendants have violated sections 524(c) and 524(a)(2) of the Bankruptcy Code. Count I alleges a violation of section 524(c) of the Bankruptcy Code, which establishes the procedure by which a creditor and debtor can agree to reaffirm a pre-petition debt so that the agreement is enforceable. Pursuant to §§ 524(c) and (d), the debtor may agree to reaffirm his or her pre-petition obligations that become discharged as a result of the bankruptcy proceeding. Such a reaffirmation agreement is binding on the debtor only if the creditor has complied with the strict procedures set forth in those subsections. *See Pereira v. First N.Am.Nat'l Bank,* 223 B.R. 28, 30 (N.D.Ga.1998). Some courts have held that "[t]he sanction for failure to comply with the requirements of § 524(c) and (d) is unenforceability of the reaffirmation agreement." *In re Jackson,* 49 B.R. 298, 302 (Bankr.D.Kan.1985); *In re Roth,* 38 B.R. 531, 539 (Bankr.N.D.Ill. 1984).

In Count II plaintiffs allege a violation of the discharge order created by

section 524(a)(2). The discharge order operates as an injunction against the collection of pre-petition debt. This subsection does not establish a private cause of action for damages to remedy a violation of the discharge injunction. *See Costa v. Welch (In re Costa),* 172 B.R. 954, 965 (Bankr. E.D.Cal.1994). "Civil contempt is the normal sanction for violation of the discharge injunction." 4 *Collier on Bankruptcy* ¶ 524.02[2][c] (15th ed.1999); *see also In re National Gypsum Co.,* 118 F.3d 1056 (5th Cir.1997).

Unlike other provisions of the Bankruptcy Code, such as § 362, § 524 does not expressly provide a private remedy for aggrieved debtors who have unwittingly agreed to a reaffirmation agreement to pay off pre-petition debt which does not conform to the requirements of § 524. *See In re Holcomb,* 234 B.R. 79, 83 (Bankr. N.D.Ill.1999). Indeed, it is readily apparent that no language in the statute expressly creates a private right of action. *See Costa,* 172 B.R. at 965. The absence of express language conferring a private remedy for violations of § 524 is clear. *See Perovich v. Humphrey (In re Perovich),* No. 97 C 3209, 1997 WL 674975, at *3 (N.D.Ill.Oct. 28, 1997) (stating "this omission does not seem accidental where Congress did expressly provide similar remedies in other sections").

Consequently, plaintiffs argue that there is an implied remedy for damages under § 524. This argument fails the second and third *Cort* factors for implying a private action for damages. First, the most important *Cort* factor of congressional intent does not indicate that § 524 should be construed to imply a private remedy. As the Court in *Costa* noted, it is helpful to contrast the legislative history of § 524 with § 362, which expressly authorizes a debtor to recover damages for willful violations of the automatic stay. *See id.,* 172 B.R. at 965–966. In 1984 Congress enacted § 362(f) which allows individual debtors to recover actual and punitive damages for willful violations of § 362.

*See* Pub.L. No. 98–353, § 304, 99 Stat. 333 (1984), *codified at* 11 U.S.C. § 362(h). Prior to 1984 § 362 did not afford a private remedy. Of central importance is the fact that Congress also amended § 524 in 1984 and failed to enact a similar provision. *See* Pub.L. No. 98–353, § 308, 99 Stat. 333 (1984), *codified at* 11 U.S.C. §§ 524(c)(2), 524(c). Congressional intent could not be more clear. If Congress intended that there be a private right of action under § 524 it could have easily inserted a similar private remedy provision in § 524 at that time. Congress chose not to do that. When Congress wishes to provide a private damages remedy, it knows how to do so. *See Redington,* 442 U.S. at 572, 99 S.Ct. 2479. Congress did just that when it amended § 362 in 1984. Thus, legislative history clearly indicates that Congress did not want to create a private right of action for a violation of § 524.

The third *Cort* factor is also not satisfied in this case. The legislative scheme expressly provides for a discharge of the debtor's debt in the form of a permanent injunction. The common relief for violation of a discharge injunction under § 524(a)(2) is through the court's inherent contempt power. *See Cox v. Zale, Del., Inc.,* No. 97 C 4464, 1998 WL 397841, at *3 (N.D.Ill.July 13, 1998); *see also* 4 *Collier on Bankruptcy* ¶ 524.02[2][c] (15th ed.1999). In this case, implying a private right of action for AVCO's alleged violation of the discharge injunction would be inconsistent with the underlying legislative scheme since Congress has already provided a remedy for such abuses. *See Costa,* 172 B.R. at 966.

In support of their argument to imply a private remedy, plaintiffs cite cases where damages have been afforded under § 524. These cases, however, only support an award of damages under either the court's inherent contempt power or its statutory contempt power under § 105(a). *See In re Hardy,* 97 F.3d 1384, 1389–1390 (11th Cir.1996)(awarding compensatory damages to the debtor under the court's statutory

contempt power for violation of the discharge injunction); *In re Latanowich,* 207 B.R. 326, 333 (Bankr.D.Mass.1997)(awarding compensatory and punitive damages for violation of the discharge order through a contempt proceeding); *In re Walker,* 180 B.R. 834 (Bankr.W.D.La.1995)(awarding compensatory and punitive damages for willful violation of the discharge order under the court's contempt power). Quite simply, the damages awarded in the cases cited by plaintiffs are in the form of contempt sanctions, which are different in kind from the extraordinary relief plaintiffs seek in this case.

In this case, plaintiffs have not purported to bring a claim in contempt requesting relief pursuant to the court's inherent contempt power or under the § 105 statutory contempt power. Even if they had, this Court would be unable to fashion relief for all of the named plaintiffs, because "[s]anctions for violations of an injunction, in any event, are generally administered by the court that issued the injunction." *Baker v. General Motors Corp.,* 522 U.S. 222, 236, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998)(citing *Stiller v. Hardman,* 324 F.2d 626, 628 (2nd.Cir.1963) (holding that enforcement of injunctive relief must be issued by the rendition forum)); *see Pereira,* 223 B.R. at 31 ("the court whose order has been defied must entertain the contempt action"). Therefore, the as yet uncertified class action filed by plaintiffs would be an inappropriate vehicle for addressing the alleged violations of the discharge injunction by AVCO. According to plaintiffs' complaint, AVCO's collection of plaintiffs' pre-petition debt violated the discharge injunction mandated under § 524 of the Bankruptcy Code. Consequently, a request for contempt relief must be filed in the various fora that issued the discharge order.

Finally, plaintiffs make a last ditch effort to imply a cause of action under the statutory contempt power set forth in § 105(a) to support the alleged violations of § 524. Section 105(a) states in relevant part: "The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

At first blush the broad phrasing of § 105(a) gives credence to plaintiffs' assertion. However, the First Circuit Court of Appeals has stated that "section 105(a) affords bankruptcy courts considerably less discretion than first meets the eye, and in no sense constitutes 'a roving commission to do equity.'" *Noonan v. Secretary of Health & Human Servs. (In re Ludlow Hosp. Soc'y Inc.),* 124 F.3d 22, 27 (1st Cir.1997). Section 105(a) is best utilized as an equitable enforcement tool connected to substantive rights already established under the Code and not simply to further a bankruptcy concept or objective. *See* 2 *Collier on Bankruptcy* ¶ 105.01[1] (15th ed.1999).

In this case, plaintiffs argue that this Court ought to imply a private remedy under § 105 because § 524 does not permit the remedy sought. However, "section 105(a) [does not] authorize courts to create substantive rights that are otherwise unavailable under the Code." *In re Ludlow,* 124 F.3d at 28 (quoting *In re SPM Mfg. Corp.,* 984 F.2d 1305, 1311 (1st Cir.1993)). Moreover, courts have been reluctant to imply a private remedy under § 105(a) under the *Cort* analysis. *See Holloway v. Household Automotive Finance Corp. (In re Holloway),* 227 B.R. 501 (Bankr.N.D.Ill.1998) (holding there is no private cause of action under § 105(a)); *see also Simmons v. Ford Motor Credit Co. (In re Simmons),* 224 B.R. 879, 884 (Bankr.N.D.Ill.1998)(stating that "the authority given the courts under § 105 is not without limits"). Therefore, plaintiffs' attempt to bootstrap their § 524 claim onto § 105(a) fails because the latter is not to be used for the purpose of creating private remedies that are not expressly or impliedly created in other provisions of Title 11. *See id.*

Although § 105(a) cannot be used in this kind of case, it may be used to support contempt proceedings. *See, e.g., Pereira,* 223 B.R. at 31. As stated earlier, this is not a contempt proceeding. Plaintiffs have alleged that AVCO has committed egregious violations of the Bankruptcy Code. Unfortunately for plaintiffs, they have failed to seek the remedies afforded by the Bankruptcy Code.

Only one case has found an implied private right of action under § 524, *Rogers v. Nationscredit Fin. Serv. Corp.,* 233 B.R. 98, 108 (N.D.Cal.1999). In *Rogers,* the named plaintiffs sought class-wide relief for persons who had filed for bankruptcy relief and had paid discharged debts to the defendant as a result of the defendant's alleged requests and harassment.

■ That decision is unpersuasive for the reasons already stated. First, in 1984 when Congress added a private remedy to § 362, Congress also amended § 524 but failed to add a similar provision. The holding of the *Rogers* Court partly turns on the strong remedial language of Congress to be found in the legislative history of § 524 when that provision was originally enacted in 1978. *Id.* at 109 (quoting H.R.Rep. No. 95–595, at 163, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6124). Yet the *Rogers* Court fails to mention that Congress revisited § 524 in 1984 and failed to add a private remedy provision while at the same time adding one to § 362. *Id.* Second, the *Rogers* Court also rests its decision on the § 105(a) statutory contempt power. *Id.* As already discussed, such an argument overlooks the limitations of § 105(a) and the fact that the First Circuit and other courts have been unwilling to create remedies that are not supported by substantive rights afforded by the Code. This Court simply will not imply a private right of action by judicial fiat absent clear legislative intent. For the foregoing reasons Counts I and II are dismissed for failing to state a cause of action upon which relief can be granted.

## V. *Failure To State a Claim Under § 362*

### A. *Applicable Law*

As noted earlier, the automatic stay provision of § 362(a) prohibits a creditor from taking action to collect pre-petition debts. Accordingly, the analysis to be used in determining whether there has been a violation of the automatic stay begins with consideration of that Code section, which states that the filing of a petition in bankruptcy operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

■ The purpose of the automatic stay is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding. *See Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 975 (1st Cir.1997)(citing H.R.Rep. No. 95–595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97). The stay is dissolved upon disposition of the case or issuance of the discharge injunction. *See Soares,* 107 F.3d at 975 (citing 11 U.S.C. § 362). Consequently, § 362 only prohibits collection efforts during the automatic stay period. More importantly, § 362(h), unlike § 524, provides an express private right of action for "any willful violation of a stay."

■ It appears from the language of § 362 that almost any attempt made by a creditor to collect a pre-petition debt violates the automatic stay. However, it is critical to read the Bankruptcy Code as an integrated process. By so doing, one can easily recognize the potential tension between the prohibition on collection efforts provided in § 362(a)(6) and § 524(c), which authorizes negotiations to secure reaffirmation agreements. Many courts, therefore, have found that creditor collection efforts must be coercive and harassing for those efforts to constitute a violation of the automatic stay. *In re Duke,* 79 F.3d 43,

44–45 (7th Cir.1996); *Morgan Guar. Trust Co. v. Amer. Sav. & Loan,* 804 F.2d 1487, 1491 (9th Cir.1986) (finding that "the language and purposes of section 362(a) do not bar mere requests for repayment unless some element of coercion or harassment is involved"). One court has explained that the protection of § 362 "is not from communication with creditors, but from the threat of immediate action by creditors, such as foreclosure or a lawsuit." *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 86 (3rd Cir. 1988) (citations omitted).

**B. *Application of the Law to the Facts***

In Count III of the Second Amended Complaint, plaintiffs Bessette and Gonzalez merely allege that AVCO mailed unauthorized reaffirmation agreements to them, which were, in turn, signed by them and then they made payments pursuant to those agreements. Plaintiffs fail to allege any acts of defendants which constitute harassment or coercion. *See* Second Amended Complaint ¶¶ 28,29, 43–49.

Many courts have concluded that similar acts lack the requisite coercion which is required in order to state a claim under § 362. It has been held that mailing a letter directly to both the debtor and the debtor's lawyer which requests payment of a pre-petition debt does not create a claim under § 362(a) upon which relief can be granted. *See In re Jefferson,* 144 B.R. 620, 623–624 (Bankr.D.R.I.1992). Similarly, in *Duke,* the creditor initiated negotiations for reaffirmation agreements by sending a copy of the request to both the debtor's attorney and the debtor himself. The *Duke* Court found those acts to lack the necessary coercive effect required to violate § 362. *See Duke,* 79 F.3d at 46. These two cases can be contrasted with *In re Flynn,* 143 B.R. 798, 802–803 (Bankr. D.R.I.1992), where the Court held that a credit union's direct telephone contact with the debtor, while knowing that she was represented by counsel, for the sole purpose of coercing a reaffirmation of the debt, was a sanctionable violation of § 362(a)(6).

If any and all communications initiated by a creditor for purposes of securing reaffirmation of a pre-petition debt are held to violate § 362(a)(6), then the creditor's ability to negotiate reaffirmation agreements is essentially destroyed. "[A]n interpretation of § 362(a)(6) which prevents creditors from negotiating reaffirmation agreements would significantly impair the bankruptcy process." *In re Jefferson,* 144 B.R. at 623 (quoting *In re Briggs,* 143 B.R. 438, 452 (Bankr. E.D.Mich.1992)).

 In this case, plaintiffs have failed to state a claim under § 362(a) because they have only alleged bare bone facts relating to the negotiation of the reaffirmation agreements. A mere request to reaffirm the debt, absent additional facts, does not constitute coercive or harassing conduct. *See In re Jefferson,* 144 B.R. at 623. Indeed, plaintiffs admit this defect exists in their Complaint by referring to acts that are not pleaded in order to establish coercive and harassing conduct and thus forestall dismissal. *See* Plaintiffs' memo. at 25. In deciding this motion, the Court will not consider facts dehors the pleadings. Consequently, plaintiffs have failed to make the necessary allegations of coercive acts that are required to constitute a violation of the automatic stay provision in § 362(a). Maybe coercive tactics were employed by AVCO, *see* Bessette Aff., ¶¶ 3–8, but those allegations must be included in the complaint. For the foregoing reasons, Count III is dismissed for failure to state a cause of action, but plaintiffs are granted leave to further amend the Second Amended Complaint to make the allegations required to state a claim under § 362(a) of the Bankruptcy Code.

**VI. *RICO Claims***

**A. *Applicable Law***

In Counts IV, V and VI, plaintiffs assert that use of the mails by the defendants to

obtain revenues from the reaffirmation agreements resulted in a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. *See* Second Amended Complaint, ¶¶ 90–109. More specifically, in their brief, plaintiffs allege that defendants have violated § 1962(c) of RICO [1], which makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..." 18 U.S.C. § 1962(c). To state a claim under § 1962(c), a plaintiff must allege each of the four elements required by the statute: 1) conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity. *See Libertad v. Welch*, 53 F.3d 428, 441 (1st Cir.1995).

The First Circuit has consistently held that a well-pleaded complaint under RICO must allege that the "enterprise," through which the unlawful pattern of racketeering activity is committed, is a separate entity from the RICO "person," or defendant. *See, e.g., Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44–45 (1st Cir. 1991). "[T]he 'person' alleged to be engaged in racketeering activity (the defendant, that is) must be an entity distinct from the 'enterprise;' under § 1962(c) the enterprise is not liable." *Odishelidze v. Aetna Life & Cas.*, 853 F.2d 21, 23 (1st Cir.1988). Indeed, most Circuits follow this established rule. *See Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 155–156 (5th Cir.1997)(plaintiff failed to plead any distinct roles for the subsidiary and the parent so that they might be regarded as having any distinctiveness from the alleged association-in-fact enterprise); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063–1064 (2d Cir.1996) (where

corporate entities are legally separate but "operate within a unified corporate structure" and are guided by a single corporate consciousness they cannot be both the "enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering), *vacated on other grounds*, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); *NCNB Nat'l Bank of N.C. v. Tiller*, 814 F.2d 931, 936 (4th Cir. 1987) (bank could not be held liable under either § 1962(a) or (c) where its holding company and sole shareholder were alleged to be the enterprise); *Emery v. Amer. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir.1998) (holding that there can be no § 1962(c) claim against a subsidiary when the parent can exercise power over the subsidiary that is inherent in its ownership of wholly owned subsidiaries), *cert. denied*, —— U.S. ——, 119 S.Ct. 57, 142 L.Ed.2d 44 (1998).

This rule of distinctiveness has led to two separate requirements when a § 1962(c) violation under RICO is alleged. First, because the "enterprise" can not be liable under this subsection, the defendant can not also be the alleged "enterprise" named in the complaint. The reason for this is obvious—"the unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) (quoting *Arzuaga–Collazo v. Oriental Fed. Sav. Bank*, 913 F.2d 5, 6 (1st Cir.1990)).

Second, when analyzing whether the distinctiveness requirement is satisfied when the named "person" under § 1962(c) is a subsidiary of the alleged "enterprise," the named "enterprise" must be sufficiently distinct from the named "person," i.e. defendant, so that the two are not in reality the same entity. Otherwise, if the two entities are in fact the same then the re-

---

1. This Court assumes that plaintiffs are not alleging RICO violations under § 1962(a) since they failed to plead any facts that established an "investment" injury. Nor have plaintiffs pleaded any facts establishing an

"acquisition" injury under § 1962(b). *See Compagnie De Reassurance D'Ile De France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir.1995), *cert. denied*, 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 490 (1995).

quirement that the named "enterprise" be insulated from liability under § 1962(c) is unmet. One First Circuit panel has stated that if the "enterprise" benefits from the person's unlawful activities then neither is distinct for § 1962(c) purposes. *See Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 31 (1st Cir.1986); *see also Deane v. Weyerhaeuser Mortgage Co.,* 967 F.Supp. 30, 34–35 (D.Mass.1997). Furthermore, the First Circuit has also held that the § 1962(c) claim ought to be dismissed when it appears that the subsidiary did not take any actions independent from its parent. *See Compagnie De Reassurance D'Ile De France v. New England Reinsurance Corp.,* 57 F.3d 56, 91 (1st Cir.1995), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 490 (1995).

### B. *Application of the Law to the Facts*

In their Complaint, plaintiffs slice up AVCO's corporate structure in every way conceivable to circumvent the well established distinctiveness requirement under § 1962(c) of RICO. At the end of the day, plaintiffs have only served up different pieces of the same pie.

As stated earlier, Textron is a holding company and its wholly owned subsidiary, AFS, is engaged in the consumer finance business. AFS, a named defendant, in turn is the sole owner of defendant AFS Management, which provides management services to AFS and AFS' other United States subsidiaries. The individual defendants, John Does 1 through 10, are charged with "securing the reaffirmation agreements." Second Amended Complaint, ¶ 16. All of the finance business conducted by the holding company is delegated to AFS. *See id.,* ¶ 8. All receivables and income generated by AFS' subsidiaries are reported as assets and income on the financial statements of AFS. All receivables and income of AFS are reported as assets and income on the financial statements of the holding company Textron. *See id.,* ¶ 17.

Count IV alleges that AFS Management is the "person" that conducted the affairs of Textron, the alleged "enterprise," through a pattern of racketeering activity. Although Textron is not a named defendant, the issue is whether AFS Management is, in reality, the same entity as Textron which would cause violation of the distinctiveness requirement under § 1962(c). If AFS Management conducted its reaffirmation agreement activities as a division of Textron, then most courts would certainly preclude a RICO claim because the person and enterprise would then be the same entity. *See Emery,* 134 F.3d at 1324 (citing *Compagnie De Reassurance,* 57 F.3d at 92). In dismissing a RICO claim on similar facts to the present case, the *Emery* Court noted that precluding a RICO claim where the "person" is a division of the parent "enterprise," but allowing the claim where the "person" is an incorporated wholly owned subsidiary is a difference unrelated to any goal or policy of RICO. *Id.*

This Court has found that the only case which permitted a RICO claim against a subsidiary where the enterprise was the parent corporation is *Haroco, Inc. v. Amer. Nat'l Bank & Trust Co.,* 747 F.2d 384 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). In *Haroco,* however, criminals took over a corporate subsidiary which then managed to wrest control of the parent corporation and use the parent as an instrument for further criminal activities. The Seventh Circuit has since restricted the holding in *Haroco* to those facts which hold a "family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate firm and uses the firm as the instrument of his criminality." *Emery,* 134 F.3d at 1324; *see also Fitzgerald v. Chrysler Corp.,* 116 F.3d 225 (7th Cir.1997).

For the proposition that a subsidiary is not distinct from its parent for RICO purposes defendants cite *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055 (2d Cir.1996).

The *Discon* Court correctly observed the inconsistency in a situation where a RICO claim could be permitted against a RICO "person" simply because it was separately incorporated. *See id.* at 1064.

■ This Court, however, declines to follow the bright line rule that a subsidiary is never distinct from its parent for RICO purposes. The First Circuit has not established a clear test for distinctiveness. In dismissing a § 1962(c) claim for lack of distinctiveness, however, the First Circuit has looked to see if there is evidence that the subsidiary took actions independent of the parent enterprise. *See Compagnie De Reassurance,* 57 F.3d at 92 (citing *Brittingham v. Mobil Corp.,* 943 F.2d 297, 302–303 (3rd Cir.1991) (noting that § 1962(c) claims may be dismissed when the "person" and "enterprise" are in reality no different from each other because they are part of the same corporate group)). While it is true that in *Compagnie De Reassurance* the named "enterprise" was the subsidiary rather than the parent corporation, this Court finds that such a distinction would not further the purpose of the distinctiveness requirement. Therefore, the mere allegation that the RICO "person" is the subsidiary conducting the affairs of the parent is not sufficient to state a claim under § 1962(c). *See Brannon v. Boatmen's First Nat'l. Bank of Oklahoma,* 153 F.3d 1144, 1147–1148 (10th Cir.1998) (dismissing § 1962(c) claim for violating distinctiveness requirement because plaintiff only alleged that the RICO "person" was the subsidiary that conducted the affairs of the parent).

■ In this case, plaintiffs failed to allege that AFS Management took any actions independent of Textron. Plaintiffs have merely alleged that AFS, as the RICO "person," conducted the affairs of the "enterprise," Textron. Indeed, the Second Amended Complaint states that the finance operations of Textron were delegated to AFS and AFS Management. Consequently, where the named "person" is a wholly owned subsidiary under the complete control of the parent "enterprise" it is unlikely that the subsidiary took any actions independent of its parent. As a result, although the two corporations are facially distinct they are part of the same corporate entity. Thus, in this case the distinctiveness requirement that "the same entity cannot do double duty as both the RICO defendant and the RICO enterprise" is violated. *Miranda,* 948 F.2d at 44–45.

■ As stated earlier, additional evidence of the two companies integrated corporate structure is demonstrated by the fact that AFS Management's income was included on the financial statements of Textron. "When the enterprise benefits from the person's unlawful activities neither is distinct for Section 1962(c) purposes." *Weyerhaeuser,* 967 F.Supp. at 34–35 (D.Mass.1997)(dismissing RICO claims where the parent-subsidiary relationship shows an integrated operational relationship between the companies named as the "person" and "enterprise"). For the foregoing reasons Count IV is dismissed for failure to state a RICO cause of action.

Plaintiffs attempt to serve up a different piece of the corporate pie in Count V, which names AFS Management as the "person" and AFS and its consumer finance subsidiaries as the "enterprise." AFS is a named defendant. Here, plaintiffs have clearly violated the rule that the named "enterprise" is insulated from liability under § 1962(c). Further, the distinction between AFS Management and AFS is more blurred given that both companies share officers and directors. *See* Second Amended Complaint, ¶ 12. It is clearly evident that AFS and AFS Management are the same corporate entity thereby violating the distinctiveness requirement that the "person" and the "enterprise" be distinct entities. *See Miranda,* 948 F.2d at 44–45. As a result, Count V is also dismissed for failure to state a RICO cause of action.

Finally, in Count VI plaintiffs change the players one last time and name John Does 1 through 10 as the "person" and AFS and Textron as the "enterprise." Plaintiffs again make the mistake of naming a defendant as the alleged "enterprise," which is insulated from liability under § 1962(c). In addition, the First Circuit has stated in no uncertain terms that the named defendants and their officers or employees cannot be the entity that conducts its own affairs through a pattern of racketeering activity. *See Odishelidze*, 853 F.2d at 23. Similarly, other courts have held that "[b]ecause a corporation can only function through its employees and agents, any acts of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994). Further, an employee cannot be considered distinct from his corporate employer when the employee is acting at the employer's behest. *See Emery*, 134 F.3d at 1324.

In this case, plaintiffs have admitted that John Does 1 through 10, as the responsible agents of AFS and its subsidiaries, conducted the business activities of AFS and Textron. *See* Second Amended Complaint, ¶ 108. As a result, because the Does are the employees of the named "enterprise" in Count VI, the distinctiveness requirement is again violated because AFS and Textron are alleged to be conducting the affairs of itself. Consequently, plaintiffs have again failed to identify an "enterprise" which is distinct from the named "person." Count VI must also be dismissed for failure to assert a RICO claim.

## VII. *State Law Claims*

In Count VII plaintiffs allege a state law claim for unjust enrichment based upon defendants' alleged violations of the Bankruptcy Code. Although all of plaintiffs' federal claims have been dismissed at this point, this Court will pro-

ceed to decide the state law claim because that claim will resurface if plaintiffs successfully amend Count III to state a claim under § 362 of the Bankruptcy Code. In addition, this Court has discretion to exercise supplemental jurisdiction over a claim where it has dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

Defendants contend that the state law claim is preempted by the Bankruptcy Code. This Court agrees on that point. In *Summit Inv. & Dev. Corp. v. Leroux*, 69 F.3d 608, 611–613 (1st Cir.1995), the Court held that § 365(e) of the Bankruptcy Code preempted claims based upon the Massachusetts Limited Partnership Act, despite the fact that this subsection of the Code contains a preemption exception. The provisions of the Bankruptcy Code at issue in this case have no such exception. Consequently, the argument for preemption of the state law claim is even stronger.

The cases cited by plaintiffs are less than persuasive. Many of the cases cited by plaintiffs, in support of the proposition that their state law claim is not preempted, deal with the McCarran–Ferguson Act, which specifically contains an anti-preemption provision in order to preserve state regulation of the insurance industry. *See, e.g., Villafane–Neriz v. FDIC*, 75 F.3d 727, 735 (1st Cir.1996).

Congress' power to preempt state law is derived from the Supremacy Clause of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land ... any Thing in the Constitution or laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI; *see Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). The underlying impetus for preemption of state law is congressional intent. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484–486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

State law is generally preempted for two reasons. First, if Con-

gress intended federal law to occupy the field exclusively, then state law regulating conduct in that area is preempted. *Id.* Preemption of state law in this manner "may be found from a 'scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n.,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Second, state law is also preempted where it conflicts with federal law in such a way that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (citations omitted).

In this case, plaintiffs state law claim for unjust enrichment piggybacks on their claims of violations of §§ 524 and 362 of the Bankruptcy Code. Many courts have found that the extensive reach of the Bankruptcy Code preempts virtually all claims relating to misconduct in the bankruptcy court. *See MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 912–915 (9th Cir.1996)(stating that the "comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control"); *see also Cox v. Zale Del. Inc.,* No. 97 C 4464, 1998 WL 397841, at *5 (N.D.Ill.July 13, 1998). In *Cox,* the Court dismissed plaintiffs' state law claims that were based upon violation of §§ 524 and 362 of the Bankruptcy Code because the state law claims depended solely upon the alleged violations of the Code. *Id.* Of central importance to the *Cox* Court was the fact that the Code has its own enforcement scheme for such violations, which is in the form of contempt sanctions. *Id.* One court has stated that "the Bankruptcy Code provides a comprehensive scheme reflecting a balance, completeness and structural in-

tegrity that suggests remedial exclusivity." *Brandt v. Swisstronics, Inc. (In re Shape),* 135 B.R. 707, 708 (Bankr.D.Me.1992).

In this case, the Bankruptcy Code provides the remedial scheme for addressing violations of §§ 524 and 362, including possible contempt sanctions under the bankruptcy court's inherent contempt power and § 105. *See Pereira v. First N. Amer. Nat'l Bank,* 223 B.R. 28, 31 (N.D.Ga.1998) (dismissing state law claims based upon alleged violations of §§ 524 and 362 of the Bankruptcy Code). As stated previously, a complaint filed in the appropriate forum would allow plaintiffs to take advantage of the remedies that the Code affords under the subsections at issue in this case. It is clear that Congress intended that violations of the automatic stay and the discharge injunction be remedied through the Bankruptcy Code rather than through state law actions for unjust enrichment. Plaintiffs' state law claim for unjust enrichment, which is based solely upon alleged violations of §§ 524 and 362, therefore, are preempted by the Bankruptcy Code. Consequently, Count VII is dismissed for failure to assert a viable state law cause of action.

### Conclusion

For the foregoing reasons defendants' motion to dismiss plaintiffs' Second Amended Complaint is granted for failure to state claims upon which relief may be granted. Plaintiffs are hereby granted leave to file an amended Count III only. Plaintiffs have thirty (30) days from the date hereof to file the amended complaint, and defendants twenty (20) days after filing to respond thereto. No judgments will enter until all claims in this case are resolved.

It is so ordered.