**In re Evelyn ESTRADA, Debtor.**

**No. 09–31081–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

Aug. 31, 2010.

Patricia A. Redmond, Miami, FL, for Debtor.

Edward J. O'Sheehan, Shutts & Bowen, Ft. Lauderdale, FL, for National City Mortgage.

### *ORDER FINDING STAY VIOLATION BUT DENYING DEBTOR'S MOTION FOR CONTEMPT*

ROBERT A. MARK, Bankruptcy Judge.

The Court conducted hearings on January 19, 2010, and May 27, 2010, on the Chapter 7 debtor, Evelyn Estrada's ("Debtor's") Motion to Hold National City Mortgage in Contempt (the "Contempt Motion") [CP# 20]. The Contempt Motion raises a single determinative issue—Does a secured creditor violate the automatic stay by threatening to suspend its reporting of payments to credit bureaus if the debtor refuses to reaffirm the debt? For the reasons that follow, the Court finds that the letter sent to the Debtor did technically violate the stay. However, based upon the arguments and testimony presented at the May 27th hearing, the Court finds that the Motion for Contempt should be denied.

### *Factual and Procedural Background*

The Debtor filed this Chapter 7 case on September 30, 2009. The Debtor listed her home on Schedule A with a value of $280,000, and listed National City Mortgage ("National") on Schedule D as a creditor holding a first mortgage on the home in the amount of $92,900.

On October 6, 2009, about a week after the Debtor filed her petition, Debtor's counsel received a letter (the "Reaffirmation Letter") from National (Ex. A. to the Motion). The Reaffirmation Letter states that National is willing to enter into a reaffirmation agreement. The Reaffirmation Letter then states the following:

Please be advised that National City Mortgage will suspend all credit bureau

reporting if the debt is not reaffirmed prior to a discharge.

On December 1, 2009, the Debtor filed the Contempt Motion. The Contempt Motion seeks entry of an Order holding National in contempt for violation of the automatic stay and enjoining National from suspending its reporting to the credit bureaus of mortgage payments made by the Debtor. The request for injunctive relief was withdrawn without prejudice at the hearing on the Contempt Motion.

National did not appear at the January 19, 2010 hearing on the Contempt Motion but the Court found that National was properly served with the Contempt Motion and the Order setting the January 19, 2010 hearing, and the Court proceeded with the hearing.

At the conclusion of the January 19th hearing, the Court announced a bench ruling granting the Motion for Contempt. Following the hearing, however, the Court reviewed the docket and noted that on March 11, 2010, counsel filed a Notice of Appearance on behalf of National [CP# 31]. Based upon this filing, the Court found it appropriate to schedule a further hearing and to require National to file a written response to the Motion for Contempt (Order Setting Further Hearing on Debtor's Motion for Contempt [CP# 42]).

On May 24, 2010, National, now known as PNC Bank, N.A. ("PNC") filed its Brief in Response to Order Setting Further Hearing on Debtor's Motion for Contempt ("PNC's Response") [CP# 47]. PNC's Response argues that the letter in question was not intended to be a coercive threat, but rather a proper offer of a favorable inducement to reaffirm. In support of its characterization of the letter, PNC argues that lenders have the right to stop reporting mortgage payments to the credit bureaus if a borrower's personal liability has been discharged. Therefore, according to PNC, a debtor who wants the benefit of having post-bankruptcy mortgage payments reported to the credit bureaus might want to consider this benefit in choosing whether to reaffirm the debt.

PNC appeared through counsel at the May 27th hearing and presented argument and evidence consistent with its Response. First, it presented the testimony of in-house senior counsel, Gary Deutsch. Mr. Deutsch testified that based upon his knowledge and experience, mortgage lenders are not obligated to report mortgage payments to the credit agencies after a debtor's personal liability on the underlying loan is discharged. The Debtor offered no evidence or argument to refute this testimony. Second, PNC acknowledged that the letter at issue in this motion was inartfully worded and could have been viewed as a threat rather than an offer. PNC agreed that future letters would be reworded and, on June 14, 2010, it filed a Notice of Filing Amended Language for Future Letters [CP# 50]. Exhibit "A" to the Notice of Filing contains the revised language that PNC will use in future reaffirmation solicitations:

> There may be benefits to your client(s) resulting from entering into a Reaffirmation Agreement with PNC Mortgage. PNC Mortgage normally suspends credit bureau reporting during the pendency of a bankruptcy and after discharge. However, if a borrower has entered into a Reaffirmation Agreement, PNC Mortgage will continue credit reporting of the borrower's payments thereunder. Accordingly, if your client(s) reaffirms, the subsequent payment history will be reflected on you client's credit report.

> Note: The Reaffirmation Agreement must be filed with the court prior to a discharge.

Based upon PNC's Response and the evidence presented at the May 27, 2010 hearing, the Court now concludes that the Motion for Contempt should be denied. Nevertheless, since the letter sent to the Debtor in this case was threatening in nature, it was a violation of the automatic stay and the Court finds it appropriate to reiterate the legal analysis set forth in the earlier bench ruling discussing the appropriate limits on soliciting reaffirmations.

### Discussion

■ Section 362(a)(6) of the Bankruptcy Code stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." Courts generally agree that a creditor may send a post-petition letter to a debtor proposing a reaffirmation agreement without violating the automatic stay. *See e.g., Jamo v. Katahdin Federal Credit Union,* 283 F.3d 392 (1st Cir.2002); *In the Matter of Duke,* 79 F.3d 43 (7th Cir.1996). However, the creditor's communication regarding reaffirmation must not be threatening or coercive. Specifically, this Court agrees with and adopts the First Circuit's holding in *Jamo* that "while the automatic stay is in effect, a creditor may engage in post-petition negotiations pertaining to a bankruptcy-related reaffirmation agreement so long as the creditor does not engage in coercive or harassing tactics." 283 F.3d at 399.

In *Jamo,* the First Circuit concluded that the credit union did not engage in impermissibly coercive conduct by offering to allow reaffirmation of a secured debt only if the debtors also reaffirmed their unsecured debt to the credit union. Noting that reaffirmation agreements are consensual, the court found that it was permissible for a creditor to agree to reaffirmation of a secured debt only if the debtors also reaffirmed their unsecured debt. *Id.* at 400.

Although the *Jamo* court found no stay violation, it noted that "there is a fine line between hard-nosed negotiations and predatory tactics." *Id.* at 399. The Reaffirmation Letter sent by National in this case crossed the line and did violate the stay. National specifically threatened a negative consequence, namely suspending the reporting of mortgage payments to the credit bureaus, if the Debtor did not agree to reaffirm the debt. Presumably, failing to report payments would adversely affect the Debtor's credit score. This threat appeared all the more coercive since the proffer at the January 19th hearing was that the Debtor was never in default and was current under the loan when she filed this bankruptcy case. Thus, the Court finds that National violated the automatic stay by including impermissible threats in the Reaffirmation Letter.

### Despite the Stay Violation, the Motion for Contempt Will be Denied

■ The record now establishes that National did not have the obligation to continue reporting payments after discharge and the Court accepts PNC's argument that it was not intending to threaten or coerce the Debtor into reaffirming the debt. Moreover, PNC has now revised the wording of its reaffirmation letter to avoid using language which could appear to be coercive or threatening. Therefore, the Court finds it appropriate to deny the Motion for Contempt.

For the foregoing reasons, it is—

**ORDERED** that the Motion for Contempt is denied.